OPINION
{¶ 1} Defendant-appellant, Joshua Thomas Schreiber, appeals his conviction and sentence in the Butler County Court of Common Pleas for aggravated robbery with a firearm specification. For the reasons outlined below, we reverse the decision of the trial court.
 {¶ 2} On June 1, 2006, appellant was indicted on four counts of aggravated robbery in violation of R.C. 2911.01(A)(1), a first-degree felony. Each count was accompanied by a three-year firearm specification under R.C. 2941.145. A plea hearing was conducted on July 28, 2006. At the hearing, the state outlined its final plea offer on the record. Because the *Page 2 
charges and specifications against appellant all carried mandatory prison time, the maximum sentence appellant faced was 52 years. If appellant plead guilty to the four robbery charges and one firearm specification, the state agreed to dismiss the other three firearm specifications. The mandatory minimum prison time would then be six years. Pending the issuance of a presentence investigation report (PSI), the trial court indicated that it would impose the six-year minimum sentence. At the close of the hearing, appellant pled guilty to all four robbery charges and one firearm specification.
 {¶ 3} At the September 12, 2006 sentencing hearing, the trial court imposed a four-year sentence on each of the four aggravated robbery charges, to be served concurrently. The court also imposed a mandatory three-year prison term on the firearm specification to be served prior to, and consecutively with, the four-year prison term on the robbery charges. Appellant's total prison term thus amounted to seven years. Appellant timely appeals, raising four assignments of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "APPELLANT'S GUILTY PLEA WAS NOT MADE KNOWINGLY, INTELLIGENTLY AND VOLUNTARILY."
 {¶ 6} Appellant argues that his guilty plea was not knowing, intelligent, and voluntary. Due process requires that a guilty plea be made knowingly, intelligently, and voluntarily. State v. Engle,74 Ohio St.3d 525, 527, 1996-Ohio-179. Prior to accepting a guilty plea, the trial court must inform the defendant that he is waiving his privilege against compulsory self-incrimination, his right to a jury trial, his right to confront his accusers, and his right of compulsory process of witnesses. State v. Turner, 105 Ohio St.3d 331, 2005-Ohio-1938, ¶ 33.
 {¶ 7} Crim.R. 11(C)(2)(c) requires that the trial court personally inform the defendant of the constitutional guarantees he is waiving by entering a guilty plea. The rule also *Page 3 
obligates the trial court to determine that the plea is made voluntarily and that the defendant comprehends the crimes charged, maximum penalties, and ineligibility for probation or community control sanctions, if applicable. Crim.R. 11(C)(2)(a). The court must also ensure that the defendant understands the effect of the guilty plea, and that the court may enter judgment and impose sentence upon acceptance of the plea. Crim.R. 11(C)(2)(b).
 {¶ 8} The trial court must substantially comply with the requirements of Crim.R. 11(C). State v. Goens, Butler CA2005-06-174, 2006-Ohio-4324, ¶ 9. Substantial compliance is met where the record indicates that, under the totality of the circumstances, the defendant "subjectively understands the implications of his plea and the rights he is waiving." Id., quoting State v. Nero (1990), 56 Ohio St.3d 106, 108. A defendant who argues that his guilty plea was not knowingly, intelligently, and voluntarily made must also show prejudicial effect. Nero at 108. "The test is whether the plea would have otherwise been made." Id.
 {¶ 9} After thoroughly reviewing the record, we conclude that appellant's guilty plea was not knowing, intelligent, and voluntary due to the circumstances surrounding the plea. First, we note that the trial court accepted a guilty plea from appellant even though appellant maintained his innocence. After discussing the plea at length, appellant was prompted to make a final decision by his attorney:
 {¶ 10} "MR. ALEXANDER: Judge, if I can place the record. It's 3:30. We have been in the courtroom now for two hours. * * * Mr. Schreiber and I have had a chance to discuss this. He needs to make a decision and let us know.
 {¶ 11} "THE COURT: It's up to you, Mr. Schreiber.
 {¶ 12} "THE DEFENDANT: Well, considering what you have told me, Judge, and considering what you have just explained to me, and despite the charges here, or statements, aggravated robbery, which I know I wouldn't be found guilty of * * *." *Page 4 
 {¶ 13} Appellant further maintained his innocence after the prosecution read the statement of facts into the record:
 {¶ 14} "THE COURT: Mr. Schreiber, do you admit that the prosecutor's statement of facts is an accurate statement of what happened?
 {¶ 15} "THE DEFENDANT: Absolutely not.
 {¶ 16} "THE COURT: Okay. Are you willing to accept the result of this trial if you are found guilty, even though you — let me back up. Even though you don't admit the facts as stated, are you willing to enter a guilty plea in this matter? Are you willing to accept the verdict of guilty with what you have been told is going to be the likely sentence here of six years, are you willing to accept that even though you don't admit that you engaged in-
 {¶ 17} "THE DEFENDANT: (Inaudible) — because of the fact that — I mean, we have discussed the plea bargain and that's where I stand, yes."
 {¶ 18} The plea hearing was not an Alford plea hearing, nor was the plea form an Alford plea form.[1] Appellant did not admit the facts making up the offenses, but the trial court did not explore this further. Instead, the court continued the plea colloquy and accepted appellant's guilty plea. Such circumstances support appellant's argument that his plea was not knowing, intelligent, and voluntary.
 {¶ 19} Second, the issue of appellant's competency to understand the proceedings and charges against him was not properly resolved. Defense counsel filed a suggestion of incompetency prior to the plea hearing and also orally raised the issue at the hearing:
 {¶ 20} "MR. ALEXANDER: * * * Josh can have intelligent conversation and understand what is going on. My concern is that each time we sit down, we start from square *Page 5 
one. And I don't mean we go and revisit where we were. I mean, we truly start over. We talk about the four-year deal [offered pre-indictment]. We talk about the six-year deal. We talk about the co-defendants and what is going on and I am just not sure he is putting all of the pieces together so that by the time we get to trial he can assist me and put together his defense and build off of each day or each witness or each laboratory report. * * *
 {¶ 21} "THE COURT: Well, I have heard of people before — I am going to be very reluctant not to have this evaluated if you are insisting, but for whatever it's worth, I think the chances of this prevailing are slim to none. * * *
 {¶ 22} "MR. ALEXANDER: And I will tell you maybe it shouldn't work this way, but if we were dealing with an F5 charge or two, perhaps it wouldn't become such a big deal, but when he is declining an offer that is about as low as he can go at this point and the up side of that is potentially a 15-year minimum, the concern I have rises to the level where at least talking to a doctor would assist us both.
 {¶ 23} "THE DEFENDANT: I have been diagnosed with-
 {¶ 24} "MR. ALEXANDER: He has had some problems in the past. I talked to his dad about that and Mr. Phillabaum is aware of that. So there are some concerns, but I don't want to mislead the Court. You can have conversation with him, much like you've done. I've done the same thing, but it's my position that if we come back Monday morning and have the same conversation, we are going to start at square one again as if we perhaps didn't have the conversation.
 {¶ 25} "THE COURT: All right. Well, we have some very serious charges obviously. We are looking at potentially up to 52 years * * * and there has been the suggestion of incompetency and I am not going to just rule it out off the cuff here. So I will order that there be an evaluation to determine Mr. Schreiber's competency to stand trial and that will put *Page 6 
everything else in limbo basically until that is determined."
 {¶ 26} At this point in the hearing, the prosecutor suggested that the August 21 trial date remain intact and the attorneys engaged in a bench conference. At this time, appellant stated that he would like to accept the six-year plea deal. The court took a recess so that appellant and defense counsel could review the plea form, discuss the ramifications of the guilty plea, and fill out the form.
 {¶ 27} As indicated, during the above-quoted discussion appellant attempted to interject with "I have been diagnosed with — [.]" He was not allowed to finish the sentence, however, and defense counsel thereafter summarily explained that appellant "has had some problems in the past." The issue was not pursued further. The trial court accepted appellant's guilty plea, even though the competency issue was never resolved and the plea was accepted prior to the suggestion of incompetency being withdrawn by defense counsel. Such circumstances further support appellant's argument that his plea was not knowing, intelligent, and voluntary.
 {¶ 28} Third, we observe that appellant was promised the right to withdraw his guilty plea and never given the opportunity to do so. The prosecution provided the following on the record at the plea hearing:
 {¶ 29} "MR. PHILLABAUM: I'm sure that Mr. Alexander has also advised [the defendant] that if he hasn't done anything in the next six weeks and his record is as it was represented and the Court were to give him seven or eight years, just because [the Court] has changed [its] mind, then he has an automatic right to withdraw his plea [on] the basis of the promises that were made today.
 {¶ 30} "THE COURT: And I am not going to do that. I am not going to go back on my word. That's important to me."
 {¶ 31} The trial court acquiesced in the state's assertion that appellant had an *Page 7 
"automatic right" to withdraw his plea. When appellant received a seven-year prison term at sentencing, this "automatic right" was not brought up by the trial court, the prosecution, or defense counsel. Appellant was not given the opportunity to withdraw his plea upon learning of the seven-year sentence.
 {¶ 32} Fourth, appellant entered the guilty plea primarily based upon assurances made by the trial court and the prosecution that that he would receive the minimum six-year sentence. The trial court repeatedly declared that appellant would likely receive a six-year sentence as long as his PSI was favorable and he did not commit any unlawful acts between the plea hearing and sentencing. During the plea hearing, the trial court stated:
 {¶ 33} "THE COURT: I am telling you that knowing what I know about your record, [six years] is what your sentence is going to be. Now, I am not going to back up on that and do something else in six weeks [at the sentencing hearing], unless you do something in the next six weeks that indicates to me that you have a disregard for the law. That's it. So from that standpoint, I am giving you a guarantee as long as you don't do something else in these next six weeks or if we don't discover that you have other felonies that you committed * * * and if you just have a couple of misdemeanors, you have not much of a juvenile delinquency record and you keep your nose clean these next six weeks in jail, then * * * you are going to get six years."
 {¶ 34} Later in the hearing, the court reiterated:
 {¶ 35} "THE COURT: * * * [T]here has been extensive discussion and everything I have said, everything you said and everything the attorneys said, it's all been recorded through these microphones and it's all in the system, so it's there. And that is for your protection among other things. The likelihood here is that the sentence is going to be six years. If your record shows that you have just been convicted of a couple of misdemeanors as an adult, you don't have a big juvenile record, you haven't been convicted of any felonies, *Page 8 
if you keep your nose clean these next six weeks in jail * * * the strong, strong likelihood I am telling you what the sentence is going to be is six years. * * *"
 {¶ 36} At the close of the hearing, the court again reiterated:
 {¶ 37} "THE COURT: * * * Now, we have almost beat this to death, but I am going to say it one more time. I am going to state the arrangement that we have here. And if I am not stating it the way you see it, Mr. Schreiber, you let me know. The way I see it is this: You plead guilty to four counts of aggravated robbery. Each of those is a first degree felony. And one firearm specification. And what you almost certainly are going to get is going to be six years total."
 {¶ 38} A trial judge who intimately participates in plea negotiations runs the risk of binding the court to impose a certain sentence. As we observed in State v. Bonnell, Clermont App. No. CA2001-12-094, 2002-Ohio-5882:
 {¶ 39} "When a trial court promises a certain sentence, the promise becomes an inducement to enter a plea, and unless that sentence is given, the plea is not voluntary. Accordingly, a trial court commits reversible error when it participates in plea negotiations but fails to impose the promised sentence." Id. at ¶ 18. (Citations omitted.) See, also, State v. Baker, Greene App. No. 2005 CA 130, 2006-Ohio-7085, ¶ 42.
 {¶ 40} Although the trial court did not make a definite and certain promise to appellant, its repeated assurances regarding the likely six-year sentence influenced appellant's decision to enter a guilty plea. This further supports appellant's argument that his plea was not knowing, intelligent, and voluntary.
 {¶ 41} Finally, we also find that the trial court failed to substantially comply with Crim.R. 11(C). It does not appear that appellant subjectively understood the implications of his plea.Goens, 2006-Ohio-4324 at ¶ 9. Neither the court, the state, nor defense counsel *Page 9 
had a definitive answer regarding whether or when appellant would be eligible for judicial release. The state and the defense disputed whether appellant would be amenable to judicial release after the mandatory three-year sentence on the firearm specification. The court was unsure, and after hearing the legal opinions of both the state and the defense told appellant that there may or may not be a chance of release after three years. Also, appellant was not given a clear answer on whether the firearm specifications would have to run consecutively to the underlying offenses. Appellant was also not informed that it would take a unanimous jury to convict him if he chose to proceed to trial.
 {¶ 42} We conclude that, based upon the circumstances surrounding appellant's guilty plea, the plea was not knowingly, intelligently, and voluntarily made, and that appellant was prejudiced as a result. Appellant's first assignment of error is sustained.
 {¶ 43} Assignment of Error No. 2:
 {¶ 44} "THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING APPELLANT."
 {¶ 45} Appellant claims that the trial court abused its discretion in sentencing him to seven years because, although all of the contingencies attached to the six-year plea offer were met, the trial court sentenced him to seven years in prison in contravention of the representations made by the trial court at the time appellant submitted his guilty plea.
 {¶ 46} The trial court has broad discretion in sentencing a defendant within statutory guidelines, and a reviewing court will not reverse a sentence absent an abuse of discretion. State v. Brooks, Mahoning App. No. 05 MA 128, 2007-Ohio-2489, ¶ 9. An abuse of discretion implies that the court's decision was unreasonable, arbitrary, or unconscionable.State v. Hancock, 108 Ohio St.3d 57, 2006-Ohio-160, ¶ 130.
 {¶ 47} As stated, the court and the state assured appellant he would almost certainly receive a six-year sentence if his PSI were favorable and he did not get into any trouble while *Page 10 
awaiting sentencing. Both of these contingencies, as far as this court can ascertain, were met. According to the record, the trial court's "guarantee" of a six-year sentence was the primary inducement behind appellant's guilty plea. If appellant should receive a higher sentence, the state told appellant that he would have an "automatic right to withdraw his guilty plea." Appellant was never given the opportunity to exercise this option.
 {¶ 48} Once the trial court decided to impose a sentence longer than six years, appellant should have been given the opportunity to withdraw his guilty plea based upon the prosecution's assurance that he would have an automatic right to do so and the trial court's apparent acquiescence in this assertion. The trial court abused its discretion in imposing a seven-year sentence. Appellant's second assignment of error is sustained.
 {¶ 49} Assignment of Error No. 3:
 {¶ 50} "THE TRIAL COURT PROCEEDINGS DENIED DEFENDANT-APPELLANT EFFECTIVE ASSISTANCE OF TRIAL COUNSEL."
 {¶ 51} Appellant maintains that he suffered ineffective assistance of counsel because his trial counsel allowed him to proceed with a guilty plea under intense pressure and despite misgivings about appellant's competency. Appellant also cites that fact that he did not receive definitive answers to some of the questions he had at the plea hearing involving the ramifications of his guilty plea.
 {¶ 52} To determine whether counsel's performance constitutes ineffective assistance, we must find that counsel's actions fell below an objective standard of reasonableness and that appellant was prejudiced as a result. Strickland v. Washington (1984), 466 U.S. 668,687-88, 693, 104 S.Ct. 2052. Prejudice exists where appellant demonstrates that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Id. at 694. A strong presumption exists that a licensed attorney is competent and that the challenged action is the product of sound trial strategy and falls within the wide range *Page 11 
of professional assistance. State v. Bradley (1989), 42 Ohio St.3d 136,142, citing Strickland at 689.
 {¶ 53} We find that defense counsel's performance was not objectively reasonable. Defense counsel failed to move to withdraw appellant's guilty plea at sentencing after it became clear that appellant was to receive more than the anticipated six-year sentence. At that time, defense counsel should have moved to withdraw the plea and, based upon the state's promise of an "automatic right to withdraw," the trial court would had to have granted the motion.
 {¶ 54} Appellant was prejudiced as a result of defense counsel's deficient performance. There is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. Appellant was deprived of the opportunity to withdraw his guilty plea, even though his guilty plea was induced by the assurance that he could withdraw it if sentenced to more than six years in prison. Appellant was therefore prejudiced by defense counsel's deficient performance.
 {¶ 55} Appellant's third assignment of error is sustained.
 {¶ 56} Assignment of Error No. 4:
 {¶ 57} "THE CUMULATIVE ERRORS COMMITTED BY THE TRIAL COURT DENIED DEFENDANT-APPELLANT HIS RIGHT TO A FAIR TRIAL."
 {¶ 58} Appellant argues that even though a particular error might not constitute prejudicial error in and of itself, the cumulative effect of harmless, non-prejudicial errors resulted in unfair prejudice and deprived appellant of a fair trial. State v. Fears, 86 Ohio St.3d 329,348, 1999-Ohio-111. This argument is moot in view of our conclusion that appellant has indicated a number of prejudicial errors. Appellant's fourth assignment of error is overruled.
 {¶ 59} For the foregoing reasons, appellant's conviction is reversed, his plea and *Page 12 
sentence are vacated, and the matter is remanded to the trial court for further proceedings consistent with this opinion.
YOUNG, P.J., and POWELL, J., concur.
[1] An Alford plea is a qualified guilty plea in which a defendant voluntarily, knowingly, and understandingly pleads guilty to a charge while maintaining his or her innocence. North Carolina v. Alford (1970),400 U.S. 25, 37, 91 S.Ct. 160. *Page 1