[Cite as *State v. Perkins*, 2014-Ohio-1863.]

IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY

STATE OF OHIO

 Plaintiff-Appellee

v.

NATHAN PERKINS

 Defendant-Appellant

Appellate Case No. 25808

Trial Court Case No. 2005-CR-1432

(Criminal Appeal from
 Common Pleas Court)

. . . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of May, 2014.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
 Attorney for Plaintiff-Appellee

NICHOLAS G. GOUNARIS, Atty. Reg. No. 0064527, 130 West Second Street, Suite 2000, Dayton, Ohio 45402
 Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

 {¶ 1} Defendant-Appellant, Nathan Perkins, appeals from orders of the trial court

overruling his motion to withdraw his no contest plea, and overruling his motion to merge allied offenses of similar import for sentencing. Perkins contends that the trial court abused its discretion in overruling what he calls a "pre-sentence" motion to withdraw his plea. In addition, Perkins maintains that the trial court erred in overruling his motion to merge allied offenses of similar import.

{¶ 2}   We conclude that the trial court did not abuse its discretion in overruling Perkins' motion to withdraw his plea. To the extent the original sentence was not a final appealable error because of an error in imposing restitution, or was "void" because it failed to impose a mandatory sentence, the sentence was only "void" as to these aspects, and the proper remedy would be to re-sentence Perkins on the pertinent issues. The remainder of the sentence would still be valid, and any "voidness" in the sentence would not affect the fact that the trial court imposed sentence years before Perkins filed a motion to withdraw his plea. As a result, there would be no basis for treating the motion to withdraw the plea as a "pre-sentence" motion.

{¶ 3}   We further conclude that the trial court did not abuse its discretion in overruling Perkins' motion to merge allied offenses of similar import. The court properly construed the motion as an untimely petition for post-conviction relief and properly concluded that Perkins' motion was barred by res judicata. Accordingly, the judgment of the trial court will be affirmed.

I.  Facts and Course of Proceedings

{¶ 4}   This case has a lengthy procedural history. Perkins was indicted in May 2005, on the following charges:  one count of Felonious Assault (Serious Physical Harm); one count of Felonious Assault (Deadly Weapon); Failure to Comply with an Order or Signal of a Police

Officer; Having Weapons Under Disability; and Kidnapping. The Felonious Assault and Kidnapping charges arose from Perkins' infliction of injuries upon his ex-girlfriend on April 9, 2005. The remaining charges arose from events that occurred after the assault, on April 10, 2005.

{¶ 5} Perkins pled not guilty, and counsel was appointed. During the initial phase of the proceedings, Perkins was represented by several attorneys, some of whom were appointed, and some of whom were retained. In May 2005, Perkins filed a motion for a sanity evaluation, and a mental examination was ordered shortly thereafter. The doctor concluded that Perkins was not suffering from a serious mental disease or defect of the mind that rendered him unable to know the wrongfulness of his actions.

{¶ 6} After Perkins asked for a second psychological evaluation, the trial court ordered another evaluation. Ultimately, a second evaluation was not performed, because Perkins did not agree to speak with the doctor. February 23, 2006 Plea Hearing Transcript, pp. 5-6.

{¶ 7} On February 23, 2006, Perkins and his attorney appeared in court for the court's consideration of the request for a second psychiatric evaluation, and for the court to place the State's plea offer on the record. Essentially, the State proposed that Perkins would plead guilty to all the charges other than Felonious Assault (Deadly Weapon). The court noted that "the State has proposed [a] sentencing range of 8 years to 15 years and on those charges alone without that sentencing range, he [Perkins] would be looking at a maximum of 28 years without the sentencing range on those charges alone." February 23, 2006 Plea Hearing Transcript, p. 3.

{¶ 8} The trial court also mentioned an alternate sentencing proposal, in which the sentence would be a fixed term of 10 years. After the plea agreement was placed on the record,

the trial court asked Perkins if he had discussed the agreement with his attorney. Perkins stated that they had discussed it, and that he did not want to accept the plea agreement under either of the sentencing plans of 8 to 15 years to be determined by the court, or the fixed term of 10 years. *Id.* at pp. 4-5.

{¶ 9} Following a recess, Perkins elected to accept an amended plea offer. The terms remained essentially the same, except that Perkins would be allowed to plead no contest, rather than guilty, to the charges previously outlined. In this regard, the court once again mentioned that the agreed sentence range would be "a minimum of 8 to a maximum of 15 years." *Id.* at p. 9. The parties agreed that this was correct. *Id*. at p. 10.

{¶ 10} During the plea colloquy that followed, Perkins agreed that "other than the plea agreement, that being the sentence range for these offices," no one had promised him anything else to accept the plea. *Id.* at p. 12. After again explaining the charges and the potential sentences, the trial court stated that:

> Now, in each of these offenses, you are eligible for community control consideration, but the agreed sentence range of a minimum of 8 to a maximum of 15 years will apply in limiting the court's discretion in that.
>
> * * *
>
> Likewise, the sentence range of 8 to 15 years which is agreed upon will require the Court to sentence one or more of the terms of imprisonment consecutively with each other. Consecutively means one after the other as opposed to concurrently which means at the same time. February 23, 2006 Plea Hearing Transcript, pp.16-17.

**{¶ 11}**     At this point, the following exchange occurred:

Q. * * * Do you understand the penalties for the offenses that you are pleading to?

A.   Yes.   I didn't really understand the consecutive point.

Q.   In order to arrive at a sentence range of 8 to 15 years, the Court may be required to sentence you consecutively which means sentence you on one charge to be served and then at the conclusion of that sentence serving another sentence in order to arrive at a number within the range.

A. Yes.   *Id.* at pp. 17-18.

**{¶ 12}**     After the court concluded that Perkins' plea was knowing, intelligent, and voluntary, and that Perkins understood the charges and penalties, the court accepted Perkins' no contest plea, and found him guilty as charged.   The court referred the matter for a pre-trial investigation, and then held a sentencing hearing on March 3, 2006.   At that time, the court sentenced Perkins to 12 years in prison and imposed five years of post-release control.   The court did not mention the subject of restitution at the hearing, nor did the court mention restitution on March 6, 2006, when the court held another sentencing hearing for purposes of including a mandatory driver's license suspension, which the court had failed to discuss during the prior hearing.   At this hearing, the trial court re-imposed the 12 year sentence.

**{¶ 13}**     On March 9, 2006, the trial court filed a termination entry, imposing the 12 year sentence, a mandatory driver's license suspension, and five years of post-release control.   The entry also stated that:

The Defendant is ordered to pay complete restitution to **ARICA**

**CHAMBERS** for economic loss in the amount **to be determined by the Montgomery County Adult Probation Department**, upon which execution is hereby awarded to be paid through the Montgomery County Clerk of Courts. (Emphasis sic.)   Termination Entry, Doc. #53, p. 1.

{¶ 14}   An amended termination entry was filed on March 16, 2006, and contained essentially the same provisions, including restitution.   After Perkins appealed, we affirmed his conviction.   *See State v. Perkins*, 2d Dist. Montgomery No. 21515, 2007-Ohio-136.   On appeal, Perkins challenged the trial court's failure to dismiss his case for speedy trial violations and the court's decision to overrule his motion for a continuance to retain new counsel.   *Id.* at ¶ 4-6 and 16-17.   In addition, Perkins argued that trial counsel was ineffective by failing to move to dismiss the charges based on speedy trial violations.   *Id*. at ¶ 23.

{¶ 15}   In April 2007, Perkins filed an application to reopen his appeal, and we denied the application in May 2007.   The motion was based on appellate counsel's failure to argue that Perkins' sentences for Felonious Assault and Kidnapping should have been merged because they were allied offenses of similar import.   Perkins also contended that his consecutive sentences under *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, were erroneous because the ruling in *Foster* violated the Ex Post Facto Clause.   We rejected these contentions. *See State v. Perkins*, 2d Dist. Montgomery No. 21515 (May 7, 2007), pp. 3-4.

{¶ 16}   In March 2010, which was four years after his conviction and sentence, Perkins filed a motion to vacate his sentence, alleging that his sentence was void because the trial court allegedly failed to inform him of post-release control.   Perkins also argued that the judgment was not a final appealable order because it failed to state the manner in which he had been

convicted. The trial court overruled the motion to vacate on April 8, 2010, and concluded that the proper remedy for the post-release control omission would be a de novo sentencing hearing. Accordingly, the court ordered that Perkins be brought back for a new sentencing hearing.

{¶ 17} In April 2010, Perkins filed a motion to withdraw his plea, and requested an evidentiary hearing. Perkins argued that since he was being brought back for re-sentencing, pre-sentence standards should govern the motion to withdraw. Perkins' motion was based on alleged newly discovered evidence about Perkins' metabolization of anti-depressants and anti-anxiety medication. Perkins also alleged that poor metabolization can lead to uncharacteristically violent behavior.

{¶ 18} Between April 2010 and January 2011, the trial court set numerous hearings to let Perkins present evidence from his expert witness on the metabolization theory. However, the court also continued these hearings at Perkins' request, because Perkins could not produce his expert. After the trial court set a hearing for April 8, 2011, and indicated it would apply a post-sentence evaluation to the motion to withdraw, Perkins filed a petition for a writ of prohibition in our court. *See State v. Perkins*, 2d Dist. Montgomery No. 24573 (September 21, 2011), p. 2. In the petition, Perkins asked us to prohibit the trial court from applying a "post-sentence" standard when considering his motion to withdraw his plea. We dismissed the petition, concluding that Perkins failed to establish entitlement to extraordinary relief. *Id.* at p. 4-5.

{¶ 19} Subsequently, in February 2012, Perkins filed several pro se motions. These motions included a pro se motion to merge the Felonious Assault and Kidnapping charges as allied offenses for purposes of sentencing. Perkins also filed a pro se supplemental motion to

withdraw his plea, again arguing that there was no final appealable order because the restitution order did not determine the amount of restitution. In addition, Perkins maintained that his sentence was void because the court was required to impose a mandatory sentence based on a prior conviction of robbery. Perkins further alleged that the trial court had failed to inform him during the sentencing hearing that he was ineligible for community control due to the prior conviction.

{¶ 20} In July 2012, the trial court filed a decision overruling both the motion to withdraw the plea and the pro se supplemental motion to withdraw the plea. The court concluded that regardless of the standard applied, i.e., pre-sentence or post-sentence, there was not one "iota" of grounds upon which to withdraw the plea without the testimony of Perkins' expert, who appeared to have " 'fallen off the face of the earth.' " Decision, Order and Entry Overruling Defendant's Motion to Withdraw Plea (4/21/10) and Supplemental Motion to Withdraw Plea (2/29/12), Doc. #49, p. 3.[1] The court further concluded that the absence of a plea advisement about the mandatory prison term was vitiated by Perkins' express plea agreement that he would serve a range of 8 to 15 years. *Id.*

{¶ 21} Perkins appealed from this decision in August 2012. However, in January 2013, Perkins asked to withdraw the appeal. We granted Perkins' motion and dismissed the appeal. *See State v. Perkins*, 2d Dist. Montgomery No. 25314 (February 5, 2013).

{¶ 22} In March 2013, Perkins again filed a motion in the trial court, asking the court to merge the alleged allied offenses of similar import for sentencing. He also filed another

---

[1] After Perkins' first appeal concluded, the docket was renumbered, beginning with #1. This document is #49 in the second set of docket entries.

motion to withdraw his plea, arguing once more that there had never been a final appealable order, due to the trial court's failure to impose an amount of restitution.

{¶ 23}    On June 5, 2013, the trial court overruled both motions, in separate entries. The court concluded that the motion to merge the offenses was barred by res judicata.   The court further held that the motion to withdraw should be treated as an untimely motion for post-conviction relief.   In addition, the court noted that the post-sentence standard would apply, even if the motion were not classified as one for post-conviction relief.   In this regard, the court concluded that the omission of a restitution order in the termination entry precluded the assessment of restitution against Perkins.

{¶ 24}    Perkins appeals from the order overruling his motion to merge the offenses, and from the order overruling his motion to withdraw his plea.


II.   Did the Trial Court Abuse its Discretion

in Denying the Motion to Withdraw the No-Contest Plea?

{¶ 25}    Perkins' First Assignment of Error states that:

The Trial Court Abused Its Discretion by Denying Mr. Perkins'
Pre-Sentence Motion to Withdraw His No-Contest Plea.

{¶ 26}    Under this assignment of error, Perkins contends that the trial court abused its discretion by construing his motion to withdraw as a petition for post-conviction relief. According to Perkins, the motion should have been considered a pre-sentence motion to withdraw a plea because the original termination entry was not a final appealable order.  This contention is based on the fact that the entry imposed restitution but did not determine the

amount to be imposed. Perkins also contends that the trial court's failure to impose a "mandatory sentence" under R.C. 2929.13(F)(6) rendered the original sentence void.

**{¶ 27}** We review trial court decisions on petitions for post-conviction relief under an abuse of discretion standard. *State v. Perkins*, 2d Dist. Montgomery No. 24397, 2011-Ohio-5070, ¶ 16, citing *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 45. The abuse of discretion standard also applies to motions to withdraw a plea, whether the motion is considered to be pre-sentence or post-sentence. *See, e.g., State v. Bateman*, 2d Dist. Clark No. 2012 CA 29, 2013-Ohio-4235, ¶ 13, and *State v. Sage*, 2d Dist. Montgomery No. 25453, 2013-Ohio-3048, ¶ 16. (Citations omitted.) "An abuse of discretion is the trial court's ' "failure to exercise sound, reasonable, and legal decision-making." ' " *Perkins* at ¶ 16, quoting *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶ 62. (Other citation omitted.)

**{¶ 28}** With respect to motions to withdraw pleas, Crim.R. 32.1 provides that:

A motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea.

**{¶ 29}** "[A] presentence motion to withdraw a guilty plea should be freely and liberally granted." *State v. Xie*, 62 Ohio St.3d 521, 527, 584 N.E.2d 715 (1992). However, "even this determination is confided to the sound discretion of the trial court, and does not confer an absolute right to withdraw a guilty plea * * *." *State v. Fugate*, 2d Dist. Montgomery No. 21574, 2007-Ohio-26, ¶ 10, citing *Xie* at paragraph one of the syllabus.

**{¶ 30}** In contrast, post-sentence motions apply a stricter standard of "manifest injustice." Crim.R. 32.1. "Withdrawal of a guilty plea after sentencing is permitted only in the most extraordinary cases." *Sage*, 2d Dist. Montgomery No. 25453, 2013-Ohio-3048, at ¶ 16, citing *State v. Smith*, 49 Ohio St.2d 261, 264, 361 N.E.2d 1324 (1977). "The postsentence 'manifest injustice' standard is aimed at cases where a defendant pleads guilty without knowing what his sentence will be, finds out that his sentence is worse than he had hoped and expected, and then seeks to vacate his plea." *Fugate* at ¶ 13.

**{¶ 31}** Given the procedural posture of the case before us, Perkins' motion to withdraw would clearly be a post-sentence motion, but for his contentions regarding the deficiency in the restitution order and the impact of an allegedly void judgment under R.C. 2929.13(F)(6). We will address these issues separately.

### A. The Restitution Order

**{¶ 32}** R.C. 2929.18 allows trial courts to impose various financial sanctions, including restitution, on offenders. In this regard, R.C. 2929.18(A) states that:

Financial sanctions that may be imposed pursuant to this section include, but are not limited to, the following:

(1) Restitution by the offender to the victim of the offender's crime or any survivor of the victim, in an amount based on the victim's economic loss. If the court imposes restitution, the court shall order that the restitution be made to the victim in open court, to the adult probation department that serves the county on behalf of the victim, to the clerk of courts, or to another agency designated by the

court. If the court imposes restitution, at sentencing, the court shall determine the amount of restitution to be made by the offender. If the court imposes restitution, the court may base the amount of restitution it orders on an amount recommended by the victim, the offender, a presentence investigation report, estimates or receipts indicating the cost of repairing or replacing property, and other information, provided that the amount the court orders as restitution shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense. If the court decides to impose restitution, the court shall hold a hearing on restitution if the offender, victim, or survivor disputes the amount. All restitution payments shall be credited against any recovery of economic loss in a civil action brought by the victim or any survivor of the victim against the offender.

{¶ 33} Where a trial court fails to inform the defendant in open court that he or she is required to pay restitution, appellate courts will reverse the restitution order and " 'remand for the trial court to address the matter in open court as required by law.' " *State v. Veto*, 8th Dist. Cuyahoga No. 98770, 2013-Ohio-1797, ¶ 18, quoting *State v. Burrell*, 8th Dist. Cuyahoga No. 96123, 2011-Ohio-5655, ¶ 32.

{¶ 34} In the case before us, both sides agree that the trial court did not address restitution in open court, and, therefore, failed to comply with R.C. 2929.18(A)(1). Perkins argues that this failure caused the termination entry to lack final appealable order status. In contrast, the State contends that the termination entry was a final order, and that the effect is simply that restitution cannot be enforced against Perkins.

{¶ 35}　In support of his position, Perkins relies on *State v. Plassenthal*, 2d Dist. Montgomery No. 22464, 2008-Ohio-5465, in which we held that:

> To be final and subject to appellate review, a judgment or order must affect a "su[b]stantial right."　R.C. 2505.02.　A restitution order that fails to determine the amount of restitution owed does not affect a substantial right. The order remains interlocutory until a specific amount of restitution owed is determined.　And, being interlocutory, the order is subject to modification for that purpose.　*Id*. at ¶ 8.

{¶ 36}　Because the restitution order in *Plassenthal* was interlocutory and had been deleted in a subsequent order that was not under appeal, we concluded that the defendant's assignment of error, challenging the assessment of restitution, was without merit.　*Id.* at ¶ 9-11. We also affirmed the trial court's judgment.　*Id*. at ¶ 11.　In another case decided after *Plassenthal,* we reiterated that "a sentencing entry that orders the payment of restitution but fails to determine the amount of that restitution is not a final, appealable order."　*State v. Miller*, 2d Dist. Clark No. 08CA0090, 2010-Ohio-4760, ¶ 4.

{¶ 37}　*Plassenthal* and *Miller* were issued prior to the decision of the Supreme Court of Ohio in *State v. Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509.　In *Harris*, the Supreme Court of Ohio considered whether a forfeiture order is required to be stated in the judgment of conviction in order for the judgment to be a final appealable order.　*Id*. at ¶ 19-21. The court concluded that "a journal entry of conviction need not include a nonmandatory, related forfeiture in order to be a final, appealable order pursuant to Crim.R. 32(C)."　*Id.* at ¶ 35.　The court's decision was based on the fact that a forfeiture does not constitute "any of the substantive

requirements necessary for compliance with Crim.R. 32(C)." *Id.* at ¶ 24.

{¶ 38} As an initial matter, the Supreme Court of Ohio concluded that a forfeiture is not a "conviction" under Crim.R. 32(C) because R.C. 2981.04(B) does not contain a "positive prohibition or specific duty to be enjoined." *Id*. at ¶ 26. The burden of proof for a forfeiture also differs from the proof needed for a conviction. *Id.* at ¶ 27.

{¶ 39} The court additionally held that a forfeiture order is not a "sentence" under Crim.R 32(C). In this regard, the court relied on the definition of "sentence" in R.C. 2929.01(EE) and the definition of "sanction" in R.C. 2929.01(D)(D). *Id.* at ¶ 28. The court noted that while a "sentence" includes the sanctions or combinations of sanctions that a court imposes on an offender, R.C. 2929.01(DD) defines a sanction as " '*any penalty imposed* upon an offender who is convicted of or pleads guilty to an offense, as punishment for the offense.' " (Emphasis sic.) *Id*. The court concluded that "[b]oth of these statutes convey a clear and definite meaning. Simply put, a sentence is a penalty or combination of penalties imposed on a defendant as punishment for the offense he or she is found guilty of committing." *Id.*

{¶ 40} In concluding that forfeiture is not a "sentence," the Supreme Court of Ohio stressed that the charges to which the defendant had pled did not require forfeiture to be included as a punishment for the defendant's offenses. *Id*. at ¶ 29. Notably, the court reached this conclusion even though it had previously described a forfeiture order as a "sentence" in *State v. Hill*, 70 Ohio St.3d 25, 635 N.E.2d 1248 (1994). *Hill* was distinguished because the criminal statute involved in *Hill* (R.C. 2925.42) "required an offender to lose any right to possession of property and to forfeit to the state any interest the defendant may have had in property that was an integral part of the criminal activity." *Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972

N.E.2d 509, at ¶ 32. In contrast, the forfeiture involved in *Harris* was "not a required punishment for drug trafficking or having a weapon under disability." *Id*.

**{¶ 41}** Additionally, the Supreme Court of Ohio stressed that:

[T]he forfeiture of items contemplates judicial action and additional considerations that extend beyond a defendant's criminal case. The proceeding itself requires an additional finding by the trier of fact. R.C. 2981.04(B). Issues concerning the defendant's interest and the ability to seize the property also must be considered. R.C. 2981.06. And these determinations may be made by the trier of fact after the court finds the defendant guilty of the offense. R.C. 2981.04(B). *Harris* at ¶ 33.

**{¶ 42}** The logic used in *Harris* makes sense when applied to a restitution order. Like a forfeiture, a restitution order is not a "conviction." The statutes involved in the case before us, like the statutes in *Harris*, do not require restitution to be included as a punishment for Perkins' offenses. See, R.C. 2903.11(A)(1); R.C. 2921.331(C)(5)(a)(ii); R.C. 2923.13(A)(3); and R.C. 2905.01(A)(3). In addition, R.C. 2929.18(A) uses the term "may," meaning that restitution for a victim's economic loss is discretionary, not mandatory. Moreover, even though R.C. 2929.18(A) refers to "sentencing" offenders to any financial sanction authorized, the Supreme Court of Ohio did not find this type of description compelling in *Harris*. *Harris* at ¶ 30-31.

**{¶ 43}** Finally, like the forfeiture sanction in *Harris*, restitution is more of a civil than a criminal penalty, and "contemplates judicial action and additional considerations that extend beyond a defendant's criminal case." *Id*. at ¶ 33. For example, if a court decides to impose restitution, it is required to hold a hearing if an offender, victim, or survivor disputes the amount.

R.C. 2929.18(A)(1).   In addition, "the victim has the burden to prove by a preponderance of the evidence the amount of restitution sought from the offender."   *State v. Olson*, 2d Dist. Montgomery No. 25452, 2013-Ohio-4403, ¶ 8, citing *State v. Johnson*, 164 Ohio App.3d 792, 2005-Ohio-6826, 844 N.E.2d 372 (2d Dist.), ¶ 72.   In addition, the parties may file motions for modification of payment terms. R.C. 2929.18(A)(1).

**{¶ 44}**   In view of these similarities, there would be logic in holding that the journal entry of conviction need not include a non-mandatory, related order of restitution in order to be a final appealable order under Crim.R. 32(C).   *Harris,* 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509, at ¶ 35.   Nonetheless, we will adhere to our prior authority for two reasons.   First, we have not found a case applying *Harris* to the issue of restitution.   Instead, courts continue to take the view that entries contemplating further action on restitution are not final appealable orders.   *See, e.g., In re J.C.*, 11th Dist. Lake No. 2012-L-083, 2013-Ohio-1292, ¶ 12, and *State v. Walker*, 6th Dist. Lucas No. L-12-1204, 2013-Ohio-2131, ¶ 9.

**{¶ 45}**   Second, the Supreme Court of Ohio stated in *State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, that:

> Notably, the determination of restitution entails a substantive legal decision or judgment and is not merely a mechanical part of a judgment. Restitution is a financial sanction, based on a victim's economic loss, that is imposed by a judge as part of a felony sentence.  See R.C. 2929.18(A)(1). See also *State v. Danison*, 105 Ohio St.3d 127, 2005-Ohio-781, 823 N.E.2d 444, syllabus.   It is not an order that is so "mechanical in nature" that its omission can be corrected as if it were a clerical mistake. *Londrico v. Delores C. Knowlton,*

*Inc*. (1993), 88 Ohio App.3d 282, 285, 623 N.E.2d 723.   As the dissenting judge stated, a nunc pro tunc order cannot cure the failure of a judge to impose restitution in the first instance at sentencing.   [*State v.*] *Miller*, 2009-Ohio-3307, 2009 WL 1914620, ¶ 24.   Accord *Caprita v. Caprita* (1945), 145 Ohio St. 5, 30 O.O. 238, 60 N.E.2d 483, paragraph two of the syllabus (a nunc pro tunc entry corrects a judicial record that fails to show a correct order or judgment of the court because the order or judgment was not recorded properly in the first place).   We agree and therefore hold that a court may not use a nunc pro tunc entry to impose a sanction that the court did not impose as part of the sentence.   *Miller* at ¶ 16.

**{¶ 46}**   *Miller* was decided before *Harris*, and the Supreme Court has not chosen to revisit the restitution issue.   Accordingly, we conclude, based on the above authority, that Perkins' original sentencing order was not a final appealable order.   Despite this fact, Perkins is not necessarily entitled to have his motion to withdraw treated as a pre-sentence motion.

**{¶ 47}**   In *State v. Fisher*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, the Supreme Court of Ohio considered arguments similar to those made by Perkins, but in the context of post-release control rather than restitution.   The defendant in *Fisher* had been convicted in 2002, and his conviction was affirmed on appeal.   Several years later, the defendant successfully moved for re-sentencing under *State v. Bezak*, 114 Ohio St.3d 94, 2007-Ohio-3250, 868 N.E.2d 961, which had held that sentences omitting a statutorily mandated post-release term are void.   *Id.* at ¶ 2-3.   On appeal of the re-sentencing decision, the defendant argued that "because his original sentence was void, his first direct appeal was 'not valid' and that this appeal is in fact 'his first direct appeal' in which he may raise any and all issues relating to his

conviction." *Id.* at ¶ 4.

{¶ 48} The Supreme Court of Ohio rejected this contention. First, the court held that "when a judge fails to impose statutorily mandated postrelease control as part of a defendant's sentence, that part of the sentence is void and must be set aside." *Id.* at ¶ 26. Significantly, however, the court restricted the new sentencing hearing to proper imposition of post-release control. *Id.* at ¶ 28-29.

{¶ 49} In addition, the Supreme Court of Ohio rejected the defendant's contention that the first appeal was a nullity because his sentence was void. In this regard, the court reasoned that a judgment of conviction existed, because it set forth the conviction and sentence; the sentence was merely illegal, and the first appeal was not a nullity. *Id.* at ¶ 38-39.

{¶ 50} This is essentially the argument being made in the case before us. Perkins contends that because there was no final appealable order, there was no sentence, and his motion to withdraw should be treated as a pre-sentence motion. We disagree. To the extent the sentence was "void" because of the restitution error, the proper remedy would be to re-sentence Perkins on the restitution issue. The remainder of the sentence would still be valid, and any "voidness" in the sentence would not affect the fact that the trial court imposed sentence long before Perkins filed the motion to withdraw his plea. As a result, there would be no basis for treating the motion to withdraw as a "pre-sentence" motion.

B. The Issue of a "Mandatory Sentence"

{¶ 51} Perkins' second contention is that the trial court's failure to impose a "mandatory sentence" under R.C. 2929.13(F)(6) rendered the original sentence void. In this

regard, Perkins notes that he had been previously convicted of a second degree felony, and that the trial court, therefore, was required by R.C. 2929.13(F)(6) to impose a mandatory prison term. Because the trial court failed to impose such a term under this statute, Perkins contends that his sentence is void, making his motion to withdraw a plea a pre-sentence motion.

{¶ 52}    As support for this proposition, Perkins relies on *State v. Boswell*, 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422, which held that "[a] motion to withdraw a plea of guilty or no contest made by a defendant who has been given a void sentence must be considered as a presentence motion under Crim.R. 32.1." *Id.* at syllabus. *Boswell* was decided prior to *Fisher*, however, and "[m]ultiple courts have concluded that, due to *Fischer*, a plea withdrawal motion filed in a case where the post-release control portion of the sentence is void is to be considered a post-sentence motion." (Citations omitted.) *State v. Easterly*, 7th Dist. Mahoning No. 12 MA 208, 2013-Ohio-2961, ¶ 19. The same reasoning would apply to other defects in a sentencing entry rendering that particular part of the entry "void."

{¶ 53}    In this vein, the Supreme Court of Ohio has addressed other facets of sentencing in decisions issued after both before and after *Fisher*, and has concluded that the orders in question are either not "void," or are void only insofar as the particular part of the order is concerned.

{¶ 54}    In *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, the defendant was convicted of aggravated murder in 1991 and was sentenced to the death penalty. *Id.* at ¶ 2. After post-conviction relief was unsuccessful in state court, the federal courts ordered that the defendant be re-sentenced based on statutory guidelines for aggravated murder in the absence of a capital specification. *Id.* at ¶ 3-5.

{¶ 55} When the defendant was re-sentenced, the trial court did not mention court costs during the sentencing hearing, but imposed them in the judgment entry. *Id.* at ¶ 6. On appeal, the defendant analogized his situation to post-release control, where the failure to notify a defendant of a statutorily-mandated item would result "in a void sentence, necessitating complete resentencing." *Id.* at ¶ 13. The Supreme Court of Ohio rejected this argument, however, by distinguishing court costs from post-release control. In this regard, the court stated that:

> There is a significant difference between postrelease control and court costs in regard to the duty of the trial court. Simply, the trial court has the power to waive the payment of court costs; the court does not have the power to waive the imposition of postrelease control. While the imposition of court costs is mandatory, the court's waiver of payment remains discretionary. The trial court does not act outside of its jurisdiction when it fails to require payment of court costs.
>
> Further, there are no implications or effects upon the powers of other branches of government when a trial court fails to impose court costs. No other entity derives its jurisdiction from the court's imposition of costs.
>
> The other important distinction is in the very nature of court costs. This court has held that costs are distinct from criminal punishment. "[A]lthough costs in criminal cases are assessed at sentencing and are included in the sentencing entry, costs are not punishment, but are more akin to a civil judgment for money."
>
> *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, ¶ 15. This court has held that "[t]he duty to pay court costs is a civil obligation arising

from an implied contract." *Strattman v. Studt* (1969), 20 Ohio St.2d 95, 49 O.O.2d 428, 253 N.E.2d 749, paragraph six of the syllabus. That court costs are a civil obligation is true in both criminal and civil cases: "By being involved in court proceedings, any litigant, by implied contract, becomes liable for the payment of court costs if taxed as a part of the court's judgment. A judgment for costs in a criminal case is a civil, not a criminal, obligation, and may be collected only by the methods provided for the collection of civil judgments." *Id. Joseph* at ¶ 18-20.

**{¶ 56}** Accordingly, the Supreme Court of Ohio concluded that a court's failure to orally notify a defendant that it was imposing court costs did not void the sentence, and was just error that could be remedied by allowing the defendant to move the trial court, on remand, for a waiver of payment of court costs. *Id.* at ¶ 22-23

**{¶ 57}** As was noted, Fisher was decided subsequently, and limited the application of the voidness doctrine. *Fisher*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, at ¶ 26-29. After *Fisher*, the court decided *Harris*, 132 Ohio St.3d 318, 2012-Ohio-1908, 972 N.E.2d 509. In *Harris*, the Supreme Court of Ohio considered "whether the failure to include a mandatory driver's license suspension in a criminal sentence renders the sentence void." *Id.* at ¶ 1.

**{¶ 58}** In addressing this issue, the court discussed its prior authority, including *Fisher* and *Joseph*. The court first concluded that a mandatory license suspension is like post-release control because it is required by law to be part of the offender's sentence. *Id.* at ¶ 14, citing R.C. 2925.03(D)(2) and (G). In addition, the court stressed that if a trial court fails to include the mandatory term, the executive branch cannot impose the suspension once the offender leaves

prison. *Id.* The court also distinguished *Joseph* on the basis that the court costs in *Joseph* were not criminal sanctions. *Id.* As a result, the court held that failure to include the driver's license suspension rendered the sentence void in part. *Id*. at ¶ 15.

{¶ 59} Assuming for purposes of argument that the sentence in the case before us is "void" because of a failure to impose a mandatory sentence under R.C. 2929.13(F)(6), the sentence would only be void in part. And, based on our prior discussion, this would not entitle Perkins to have his motion to withdraw considered under pre-sentence standards. Furthermore, as the State notes, we have previously held that:

> [A] motion to withdraw a plea that is made before sentencing, but after learning of the imminent sentence to be imposed, is considered to be filed after sentencing. This approach is consistent with the purpose behind the post-sentencing standard. As we stated in *State v. Fugate*, 2d Dist. Montgomery No. 21574, 2007-Ohio-26, ¶ 17: "The post-sentence 'manifest injustice' standard is aimed at cases where a defendant pleads guilty without knowing what his sentence will be, finds out that his sentence is worse than he had hoped and expected, and then seeks to vacate his plea." (Citations omitted.) *State v. Haney*, 2d Dist. Montgomery No. 25344, 2013-Ohio-1924, ¶ 10.

{¶ 60} Accordingly, the trial court did not abuse its discretion by refusing to apply a pre-sentence standard to Perkins' motion to withdraw.

{¶ 61} As we noted above, Crim.R. 32.1 allows post-sentence withdrawal of pleas only upon a showing of manifest injustice. This allows withdrawal "only in the most extraordinary cases." *Sage*, 2d Dist. Montgomery No. 25453, 2013-Ohio-3048, at ¶ 16, citing *Smith*, 49

Ohio St.2d at 264, 361 N.E.2d 1324. After reviewing the record, we see no basis for concluding that this case meets those standards. All the issues Perkins raises, other than the medication issue, would have been apparent on the record and could have been raised on direct appeal. Rather than doing so, Perkins waited several years to file his motion to withdraw. Furthermore, the record clearly indicates that Perkins was well aware that he would be sentenced to a prison term of between eight and 15 years, not to community control. This was explained numerous times in open court, and Perkins indicated that he understood and agreed.

{¶ 62} Finally, with respect to the medication issue, the trial court continued the matter several times in order to allow Perkins to present evidence. He was never able to do so, and the material presented to the court was not authenticated and proved nothing. This was not the court's fault – Perkins was given ample opportunity over a significant period of time to provide evidence to support his motion, but he failed to do so. Accordingly, the trial court did not abuse its discretion in overruling the motion to withdraw. Furthermore, although the trial court was incorrect in apparently concluding that the restitution order was final, the error did not impact the court's ultimate decision, which was correct.

{¶ 63} Perkins' First Assignment of Error is overruled.


### III. Did the Trial Court Err in Overruling
### the Motion to Merge Allied Offenses?

{¶ 64} Perkins' Second Assignment of Error states that:

The Trial Court Erred by Overruling Mr. Perkins' Motion to Merge Allied Offenses of Similar Import for Sentencing.

**{¶ 65}** Under this assignment of error, Perkins contends that the trial court erred in overruling his motion to merge allied offenses of similar import for sentencing. Perkins argues that the charges of Felonious Assault and Kidnapping were allied offenses, and that he should not have received consecutive sentences for these charges.

**{¶ 66}** Perkins was sentenced to seven years in prison for Felonious Assault and to four years in prison for Kidnapping. The sentences were imposed consecutive to each other. They were also imposed concurrent with a three-year sentence for Having Weapons Under Disability, and consecutive to a one-year sentence for Failure to Comply with a Signal or Order of Police Officer.

**{¶ 67}** Perkins did not raise merger during his direct appeal. In an application to reopen the direct appeal, Perkins did challenge the court's failure to merge sentences, but we overruled the application. *Perkins*, 2d Dist. Montgomery No. 21515 (May 7, 2007).

**{¶ 68}** In February 2012, Perkins again raised the merger issue when he filed a pro se motion in the trial court seeking merger of the Kidnapping and Felonious Assault offenses. However, in July 2012, when the trial court ruled on Perkins' pending motions to withdraw his plea, the court struck all the February 2012 pro se motions that Perkins had filed, because Perkins was represented by counsel at the time he filed the motions. *See* Decision, Order and Entry Overruling Defendant's Motion to Withdraw Plea (4/21/10) and Supplemental Motion to Withdraw Plea (2/29/12), Doc. #49, p. 4. Perkins filed a notice of appeal from this judgment in August 2012, but asked to withdraw the appeal in January 2013. We granted Perkins' motion, and dismissed the appeal. *See Perkins*, 2d Dist. Montgomery No. 25314 (February 5, 2013). In March 2013, Perkins filed yet another motion to merge the allied offenses of similar

import. Perkins is again appealing the trial court's rejection of the merger claim.

**{¶ 69}** The trial court rejected Perkins' motion for two reasons: (1) the motion was barred by res judicata; and (2) it was an untimely petition for post-conviction relief. We will address each ground.

**{¶ 70}** Perkins was convicted and sentenced in 2006, and his direct appeal concluded in 2007. As a result, the motion to merge the offenses was beyond the 180-day time limit in R.C. 2953.21(A)(2), and was untimely.

**{¶ 71}** R.C. 2953.23(A)(1) creates an exception to the 180-day time limit, but we have held that this exception does not apply where a petition argues only sentencing issues, rather than issues pertaining to the defendant's guilt. *State v. Singleton*, 2d Dist. Montgomery No. 25946, 2014-Ohio-630, ¶ 17, citing *State v. Hughes*, 10th Dist. Franklin No. 12AP-165, 2012-Ohio-4513, ¶ 10. (Other citations omitted.) However, even if the petition had been timely, the merger issue is barred by res judicata.

**{¶ 72}** "[A]llied-offense claims are nonjurisdictional * * * ." *Smith v. Voorhies*, 119 Ohio St.3d 345, 2008-Ohio-4479, 894 N.E.2d 44, ¶ 10. Consequently, these claims "may be barred through application of the principles of res judicata." (Citations omitted.) *State v. Segines*, 8th Dist. Cuyahoga No. 99789, 2013-Ohio-5259, ¶ 7. *See, also, State v. Pound*, 2d Dist. Montgomery Nos. 24789, 24980, 2012-Ohio-3392, ¶ 14 (holding that "the failure to merge sentences does not render a judgment void, but *voidable*; therefore, such challenges, if not raised on direct appeal, are barred by the doctrine of res judicata.") (Emphasis sic.) (Citation omitted.)

**{¶ 73}** In *Segines*, the Eighth District Court of Appeals noted that:

Under the doctrine of res judicata, a final judgment of conviction bars the convicted defendant from raising and litigating in any proceeding, except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial that resulted in that judgment of conviction or on an appeal from that judgment. *State v. Perry*, 10 Ohio St.2d 175, 180, 226 N.E.2d 104 (1967). Therefore, "any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 16.

Further, claims of error may be barred by res judicata even where there has been a change in the law. *State v. Szefcyk*, 77 Ohio St.3d 93, 95, 1996-Ohio-337, 671 N.E.2d 233. Thus, while the Ohio Supreme Court's 2010 decision in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, set forth a new, conduct-based analysis for considering whether two offenses are allied offenses subject to merger, a new judicial ruling applies only to cases that are pending on the announcement date of the new ruling, and may not be applied retroactively to a conviction that has become final. *State v. Allbaugh*, 4th Dist. Athens No. 12CA23, 2013-Ohio-2031. *Segines* at ¶ 8-9.

**{¶ 74}** Although Perkins has argued that issues pertaining to restitution and failure to impose a mandatory sentence render the entire sentence void, we have already concluded that this argument is incorrect. Perkins had the ability to raise the issue of allied offenses on direct appeal, and he also dismissed his appeal from a prior order overruling his motion to merge allied

offenses of similar import. Res judicata, therefore, prohibits any consideration of this issue, and the trial court did not abuse its discretion in overruling Perkins' motion to merge the Felonious Assault and Kidnapping offenses.

{¶ 75} Based on the preceding discussion, Perkins' Second Assignment of Error is overruled.


IV.   Conclusion

{¶ 76} All of Perkins' assignments of error having been overruled, the judgment of the trial court is affirmed.


. . . . . . . . . . . . .

FROELICH, P.J., and FAIN, J.,    concur.



Copies mailed to:

Mathias H. Heck
Andrew T. French
Nicholas G. Gounaris
Hon. Mary Lynn Wiseman