[Cite as *State v. Leonhart*, 2014-Ohio-5601.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
WASHINGTON COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | Case No. 13CA38 |
| Plaintiff-Appellee, | : | |
| v. | : | DECISION AND JUDGMENT ENTRY |
| STEVEN M. LEONHART, | : | |
| Defendant-Appellant. | : | **RELEASED: 12/16/2014** |

APPEARANCES:

Dennis L. Sipe, Buell & Sipe Co., L.P.A., Marietta, Ohio, for appellant.

James E. Schneider, Washington County Prosecuting Attorney, and Alison L. Cauthorn, Washington County Assistant Prosecuting Attorney, for appellee.

Harsha, J.

{¶1}   Steven M. Leonhart pleaded guilty to charges of aggravated murder with accompanying firearm and forfeiture specifications, aggravated burglary, and felonious assault.  After determining that Leonhart had entered his plea voluntarily, the Washington County Court of Common Pleas convicted him of these charges and imposed consecutive sentences resulting in an aggregate prison term of life with parole eligibility after he has served 52 years.  The trial court also ordered that Leonhart be assessed costs.

{¶2}   Following this court's dismissal of his initial appeal because of the lack of a final appealable order, Leonhart filed motions to withdraw his guilty plea.  The trial court denied the motions and entered an amended sentencing entry, which reiterated the prior sentence and ordered that Leonhart pay restitution of $3,352.51 to one of the crime victims.

{¶3}   Leonhart claims in his first assignment of error that the trial court erred when it overruled his motions to withdraw his guilty pleas.  His motions, which were filed after his sentence was pronounced but before the journalization of the amended sentencing entry, constitute postsentence motions.  Therefore, an evidentiary hearing on his motions was not required because the record conclusively and irrefutably contradicted his allegations.  And notwithstanding Leonhart's claims to the contrary, his mental infirmities did not prevent him from entering a valid guilty plea.  Again contrary to his contention, the trial court informed him of his right to have the state prove the guilt of all the charges beyond a reasonable doubt. Nor could he reasonably rely on his trial counsel's representation concerning his maximum potential sentence based on the trial court's detailed admonishments at his plea hearing about the role of the court in sentencing.  Because the trial court did not abuse its discretion in denying his motions to withdraw, we reject his first assignment of error.

{¶4}   In his second assignment of error Leonhart contends that the trial court erred when it did not merge the offenses of aggravated burglary and felonious assault. Because the offenses were not committed at the same time with the same animus and involved different victims, the trial court did not err.  Leonhart's second assignment of error is meritless.

{¶5}   In his third and fourth assignments of error Leonhart claims that the trial court erred in imposing consecutive sentences.  However, because he failed to establish by clear and convincing evidence either that the record does not support the trial court's findings or that the sentence is otherwise contrary to law, these assignments of error are meritless.

{¶6}    In his fifth assignment of error Leonhart contends that the trial court abused its discretion when it ordered him to pay court costs.  We agree Leonhart filed a timely motion to waive court costs based on indigency.  However, the trial court failed to address it even though it had determined that Leonhart was indigent both when the case commenced and at the conclusion of sentencing.  We sustain Leonhart's fifth assignment of error.

{¶7}    In his sixth assignment of error Leonhart asserts that the trial court erred by ordering him to pay restitution.  The trial court erred by failing to establish the amount of restitution in open court at the sentencing hearing.  Rather, it imposed the sum in its amended sentencing entry outside his physical presence.  We sustain Leonhart's sixth assignment of error.

{¶8}    In his seventh assignment of error Leonhart claims that his trial counsel's acts and omissions previously referred to depriving him of his right to the effective assistance of counsel.  Based upon our disposition of those assignments he fails to establish that his trial counsel was ineffective.  This assignment of error is meritless.

{¶9}    Therefore, we affirm the trial court's judgments denying his postsentence motions to withdraw his guilty plea and the portion of his sentence imposing his aggregate prison term; we reverse the portion of his sentence imposing costs and restitution.

## I. FACTS

{¶10}   In January 2012, Leonhart drove his all-terrain vehicle to the home of Willard Baker, where Leonhart's ex-girlfriend, Holly Fickiesen, was staying.  Leonhart, who was armed with a loaded shotgun and intended to kill Fickiesen, waited for Baker

to leave for work.  When Baker left, Leonhart forced his way through a door and assaulted Fickiesen.  Holding her at gunpoint, Leonhart told her that he was going to shoot her, set the house on fire, and then shoot himself.

{¶11}  When Baker unexpectedly returned to the home and walked into the kitchen, Leonhart shot him to death.  Fickiesen fled the house and pounded on the door of the next-door neighbor, Mike Lisk.  When Lisk opened the door, Fickiesen ran inside and hid.  Leonhart then struggled with Lisk, knocking him down and breaking his hip.  After Leonhart fled, the police subsequently arrested him and obtained his confession to breaking into Baker's house and shooting him.

{¶12}  A Washington County grand jury charged Leonhart with aggravated murder and other felonies, the trial court determined that Leonhart was indigent and appointed him trial counsel.  Leonhart entered a plea of not guilty to the charges and also filed a motion to waive court costs because of his indigency.  (OP13)

{¶13}  Leonhart then filed a written plea of not guilty by reason of insanity and suggestion of incompetency.  The trial court ordered evaluations to determine his competency to stand trial and his mental condition at the time of the commission of the charged offenses.  Denise A. Kohler, Ph.D., a clinical and forensic psychologist, diagnosed Leonhart with a severe mental illness consisting of major depression and alcohol dependence.  But Dr. Kohler concluded that Leonhart was capable of understanding the nature and the objective of the proceedings against him and was able to assist his attorney with his defense.  Dr. Kohler further concluded that although Leonhart suffered from a severe mental disease consisting of anxiety and depression at the time the crimes occurred, he knew the wrongfulness of his actions.

{¶14} Following a hearing at which the parties stipulated to the report's conclusion of his competency to stand trial, the trial court determined Leonhart was competent to stand trial because he was capable of understanding the nature and objective of the proceedings against him and was capable of assisting in his defense.

{¶15} Leonhart withdrew his former pleas of not guilty and pleaded guilty to the charges of aggravated murder and the accompanying specifications, one of the two counts of aggravated burglary, and felonious assault. The state dismissed the remaining charges. The trial court conducted a colloquy to determine whether Leonhart was fully informed of his rights and understood the consequence of his guilty plea. Upon being satisfied that Leonhart knowingly, intelligently, and voluntarily entered his plea and waived his constitutional rights, the court accepted his plea and convicted him of the charges upon the facts stipulated by the parties.

{¶16} After a hearing the trial court imposed a sentence of life with parole eligibility after 30 years on the aggravated murder charge, 3 years for the accompanying firearm specification, 11 years on the aggravated burglary charge, and 8 years on the felonious assault charge. The court specified that these prison sentences would be served consecutively so that the aggregate sentence would be life without parole eligibility until he had served 52 years. The court also ordered the requested forfeiture, ordered restitution in an undetermined amount, and ordered that costs be taxed against him. At the conclusion of the hearing, the trial court noted that it understood that Leonhart was indigent and was unable to hire counsel for appeal and that counsel would be appointed for purposes of appeal. In November 2013, the trial court issued a

journal entry reflecting its orally announced sentence, except that it did not specify any restitution order or resolve Leonhart's original kidnapping charge.

{¶17}  We dismissed Leonhart's initial appeal for lack of a final, appealable order because the sentencing entry failed to address both the restitution order made at the sentencing hearing and the disposition of the kidnapping charge.

{¶18}  Then through new counsel Leonhart filed a motion to withdraw his guilty plea, claiming that he had been advised by his trial counsel that he would be eligible for parole after 30 to 35 years in prison.  Leonhart contended any lengthier sentence would be tantamount to life in prison without parole.  In a reply to the state's response, Leonhart included the affidavit of his trial counsel stating that: (1) at a pretrial conference the trial court stated that it would not impose either the maximum sentence for aggravated murder of life without the possibility for parole nor the minimum sentence for that charge, (2) based on the trial court's statement, trial counsel advised Leonhart that he would receive a maximum sentence of life with parole eligibility after 35 years, (3) trial counsel advised Leonhart that any sentence greater than that would be the equivalent of a life sentence without the possibility of parole, (4) after Leonhart entered his guilty plea, trial counsel "was shocked" when the trial court imposed an aggregate sentence of life without the possibility of parole after 52 years, and (5) if he had known that the trial court would impose that sentence, trial counsel would have advised him to proceed to trial rather than enter a guilty plea.  Leonhart also filed a supplemental affidavit in which his mother confirmed trial counsel's recollection of his statement to Leonhart that pleading guilty would result in a maximum sentence of life with the

possibility of parole after 35 years, which would give him a meaningful opportunity to be released from prison.

**{¶19}** The trial court overruled the motion because the record "definitively shows that Defendant's guilty pleas were entered knowingly, intelligently, and voluntarily at a hearing where he was repeatedly advised of the potential maximum sentence."

**{¶20}** Leonhart then filed a pro se motion and supporting affidavit to withdraw his guilty plea because the trial court purportedly accepted his plea without ensuring that he understood his right to have the court require the state to prove his guilt beyond a reasonable doubt, and that his plea was not voluntary because of his mental illness. The trial court also denied this motion.

**{¶21}** In September 2013, the trial court entered an amended sentencing entry in which it included an order that Leonhart pay restitution of $3,352.51 to Lisk and specified that the kidnapping charge had been dismissed. The remainder of the entry was the same as the prior sentencing entry.

**{¶22}** This appeal ensued.

## II. ASSIGNMENTS OF ERROR

**{¶23}** Leonhart assigns the following errors for our review:

1. The Trial [Court] Erred When It Overruled Appellant's Motions to Withdraw his Guilty Pleas.

2. The Trial Court Erred When It Did Not Merge The Offenses of Aggravated Burglary and Felonious Assault.

3. The Trial Court Erred When It Ordered that All Three Sentences Be Served Consecutively.

4. The Trial Court Erred When It Imposed Consecutive Sentences as to Counts 5 and 6 and Ordered that All Sentences Be Served Consecutively.

5. The Trial Court Abused its Discretion When It Ordered Appellant To Pay Court Costs And Entered A Judgment.

6. The Trial Court Erred When It Ordered Appellant to Make Restitution.

7. The Acts and Omissions Of Trial Counsel Deprived Appellant Of His Right To Effective Assistance Of Counsel.

### III. LAW AND ANALYSIS

### A. Motions to Withdraw Guilty Plea

### 1. Presentence and Postsentence Motions - Standard of Review

{¶24} In his first assignment of error Leonhart asserts that the trial court erred when it overruled the motions to withdraw his guilty plea. Crim.R. 32.1 provides that "[a] motion to withdraw a plea of guilty or no contest may be made only before sentence is imposed; but to correct manifest injustice the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw his or her plea."

{¶25} There is a significant difference in the appropriate standard of review for presentence and postsentence motions. "[T]he presentence motion is entitled to much more liberal treatment than the post-sentence version." *State v. Pasturzak*, 4th Dist. Scioto No. 08CA3252, 2009-Ohio-4222, ¶ 18, citing *State v. Xie*, 62 Ohio St.3d 521, 526, 584 N.E.2d 715. Leonhart claims that the trial court should have treated his motions to withdraw his guilty plea as presentence motions because they were filed before the trial court issued a sentencing entry that constituted a final appealable order, i.e., prior to its issuance of the amended sentencing entry that included a restitution order and dismissed the kidnapping charge. The state counters that the motions were postsentence motions because they were filed after the trial court pronounced his prison sentence in open court. "The distinction is significant because, while a presentence

motion to withdraw a guilty plea should be freely and liberally granted, a postsentence motion to withdraw a guilty plea requires a showing of manifest injustice." *State v. Hill*, 10th Dist. Franklin No. 12AP-463, 2013-Ohio-674, ¶ 12, citing *Xie*.

**{¶26}** As a general rule courts of appeals have held that motions to withdraw a guilty or no contest plea made after the court's pronouncement of sentence but before the court's filing of the sentencing entry are treated as postsentence motions. *See State v. Bryant*, 2013-Ohio-5105, 1 N.E.3d 878, ¶ 26-28 (10th Dist.), quoting *State v. Hall*, 10th Dist. Franklin No. 03AP-433, 2003-Ohio-6939, ¶ 10 (" '[r]egardless of whether the judgment entry had been filed, sentence had been imposed and appellant was aware that he was going to prison' "); *State v. McComb*, 2d Dist. Montgomery Nos. 22570 and 22571, 2008-Ohio-295, ¶ 7 ("a motion made after learning of the imminent sentence is considered to be filed after sentencing"); *State v. Surface*, 5th Dist. Stark No. 2008 CA00184, 2009-Ohio-950, ¶ 12 ("because appellant's request came after pronouncement of sentence [but before its journalization], we find that the appropriate standard is withdrawal only to correct a manifest injustice"); *State v. Matthews*, 6th Dist. Wood No. WD-10-025, 2011-Ohio-1265, ¶ 26 ("Where a Crim.R. 32.1 motion is made after the trial court pronounced sentence at the sentencing hearing but before a sentencing judgment is filed, the motion is to be treated as a postsentence motion under the rule"); *State v. Gordon*, 9th Dist. Summit No. 25317, 2011-Ohio-1045, ¶ 9; *State v. Neely*, 12th Dist. Clinton No. CA2008-08-034, 2009-Ohio-2337, ¶ 6 ("Appellant's request to withdraw his plea came after pronouncement of sentence, that is, after a sentencing hearing was held and appellant learned what the sentence would be, and, therefore, the appropriate standard is withdrawal only to correct a manifest injustice").

**{¶27}** This precedent is consistent with the objective of the stricter manifest-injustice standard for postsentence motions to withdraw guilty or no contest pleas. *See State v. Caraballo*, 17 Ohio St.3d 66, 67, 477 N.E.2d 627 (1985) ("The logic behind the [stricter postsentence standard] is to discourage a defendant from pleading guilty to test the weight of potential reprisal, and later withdraw the plea if the sentence was unexpectedly severe"); *Bryant* at ¶ 27, quoting *Hall* at ¶ 10 (" '[t]he purpose of the motion to withdraw a guilty plea after sentence has been imposed is to correct a manifest injustice, not to allow the defendant to test the weight of potential punishment and, if dissatisfied, withdraw his guilty plea' ").

**{¶28}** Although it is true that courts generally speak only through their journal entries, *see State v. Miller*, 127 Ohio St.3d 407, 2010-Ohio-5705, 940 N.E.2d 924, ¶ 12, the terms "imposition of sentence" and "sentence is imposed" in the pertinent Rules of Criminal Procedure have a different meaning than journalization of the sentence. In *Matthews* at ¶ 27, the Sixth District Court of Appeals reasoned that for determining when a motion to withdraw a guilty or no contest plea is made under Crim.R. 32.1, the sentence is imposed when it is pronounced:

> Treating imposition of sentence for purposes of Crim.R. 32.1 as occurring upon pronouncement of sentence at the sentencing hearing is consistent with use of the term "imposition of sentence" under Crim.R. 32 and 43. Under Crim.R. 32.1, presentence motions are those made before imposition of sentence. Under Crim.R. 43(A)(1), imposition of sentence is identified as a stage of the proceedings where a defendant must be physically present. Crim.R. 32(A) sets forth procedures for imposition of sentence, including opportunities for defense counsel, the defendant, and prosecuting attorney to speak and affording victims an opportunity to exercise their rights as provided by law at sentencing.

**{¶29}** Notwithstanding this precedent, Leonhart primarily relies on *State v. Boswell*, 121 Ohio St.3d 575, 2009-Ohio-1577, 906 N.E.2d 422, and similar appellate

cases to support his claim that his motions to withdraw should be considered under the more lenient presentence motion standard. In *Boswell* at the syllabus, the Ohio Supreme Court held that "[a] motion to withdraw a plea of guilty or no contest made by a defendant who has been given a void sentence must be considered as a presentence motion under Crim.R. 32.1." *Boswell* was premised on the Supreme Court's view at the time that a sentence is void in its entirety when the trial court fails to properly impose postrelease control.

**{¶30}** Subsequently, in *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, the Ohio Supreme Court held that when a trial court fails to properly impose postrelease control, only that portion of the sentence is void, and resentencing is limited to that issue. After *Fischer*, courts have questioned the continued validity of *Boswell*, *see State v. Triplett*, 4th Dist. Lawrence No. 11CA24, 2012-Ohio-4529, ¶ 10, and generally held that "a plea withdrawal motion filed in a case where the post-release portion of the sentence is void is to be considered a post-sentence motion." *See generally State v. Easterling*, 7th Dist. Mahoning No. 12 MA 208, 2013-Ohio-2961, ¶ 19, and cases cited therein; *see also State v. Hazel*, 10th Dist. Franklin Nos. 10AP-1013 and 10AP-1014, 2011-Ohio-4427, ¶ 17. Therefore, we find that the cases cited by Leonhart are not persuasive.

**{¶31}** More pertinently, in a similar case the Second District Court of Appeals recently held that when an original sentence is not a final appealable order because of an error in imposing restitution, the sentence is not void in its entirety. Thus a motion to withdraw a guilty plea made after the sentencing hearing but before the journalization of a final appealable order is treated as a postsentence motion under Crim.R. 32.1. *State*

*v. Perkins*, 2d Dist. Montgomery No. 25808, 2014-Ohio-1863.  The *Perkins* court

rejected the appellant's similar claim based on the Supreme Court's holding in *Fischer*:

> Perkins contends that because there was no final appealable order, there was no sentence, and his motion to withdraw should be treated as a pre-sentence motion.  We disagree.  To the extent the sentence was "void" because of the restitution error, the proper remedy would be to re-sentence Perkins on the restitution issue.  The remainder of the sentence would still be valid, and any "voidness" in the sentence would not affect the fact that the trial court imposed sentence long before Perkins filed the motion to withdraw his plea.  As a result, there would be no basis for treating the motion to withdraw as a "pre-sentence" motion.

*Id.* at ¶ 50.

{¶32}  Significantly, neither of Leonhart's motions to withdraw his guilty plea were

premised upon either of the defects that rendered his original sentence interlocutory—

the restitution order or the dismissal of the kidnapping charge.  Based on the persuasive

weight of precedent we hold that Leonhart's motions, which were filed after his sentence

was pronounced but prior to the journalization of an amended sentencing entry that

constituted a final appealable order, were postsentence motions for purposes of Crim.R.

32.1.

{¶33}  "A defendant who seeks to withdraw a plea of guilty after the imposition of

sentence has the burden of establishing the existence of manifest injustice."  *State v.*

*Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph one of the syllabus;

*State v. Ogle*, 4th Dist. Hocking No. 13CA18, 2014-Ohio-2251, ¶ 8.  A manifest injustice

is a clear and openly unjust act; it relates to a fundamental flaw in the proceedings

resulting in a miscarriage of justice or a deprivation of due process.  *See State ex rel.*

*Schneider v. Kreiner*, 83 Ohio St.3d 203, 208, 699 N.E.2d 83 (1998); *Ogle* at 8; *Hall*,

10th Dist. Franklin No. 03AP-433, 2003-Ohio-6939, at ¶ 12.  "This is an 'extremely high

standard' that permits a defendant to withdraw his plea 'only in extraordinary cases.' "

*State v. Walton*, 4th Dist. Wash. No. 13CA9, 2014-Ohio-618, ¶ 10, quoting *State v.*

*Darget*, 4th Dist. Scioto No. 12CA3487, 2013-Ohio-603, ¶ 21.

**{¶34}** The decision to grant or deny a Crim.R. 32.1 postsentence motion to

withdraw a guilty plea is committed to the sound discretion of the trial court; appellate

review of the denial of the motion is thus limited to a determination of whether the trial

court abused its discretion. *Walton* at ¶ 11; *see also Smith* at paragraph two of the

syllabus ("A motion made pursuant to Crim.R. 32.1 is addressed to the sound discretion

of the trial court, and the good faith, credibility and weight of the movant's assertions in

support of the motion are matters to be resolved by that court"). "A trial court abuses its

discretion when it makes a decision that is unreasonable, unconscionable, or arbitrary."

*State v. Darmond*, 135 Ohio St.3d 343, 2013-Ohio-966, 986 N.E.2d 971, ¶ 34.

**{¶35}** With this deferential standard of review governing our analysis, we turn to

the merits of Leonhart's arguments.

## 2. Validity of Guilty Plea

**{¶36}** Leonhart argues that the trial court erred in denying his motions to

withdraw his guilty plea because his plea was not knowingly, intelligently, and voluntarily

made. " 'When a defendant enters a plea in a criminal case, the plea must be made

knowingly, intelligently, and voluntarily. Failure on any of those points renders

enforcement of the plea unconstitutional under both the United States Constitution and

the Ohio Constitution.' " *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897

N.E.2d 621, ¶ 7, quoting *State v. Engle*, 74 Ohio St.3d 525, 527, 660 N.E.2d 450

(1996). "An appellate court determining whether a guilty plea was entered knowingly,

intelligently, and voluntarily conducts a de novo review of the record to ensure that the trial court complied with the constitutional and procedural safeguards." *State v. Moore*, 4th Dist. Adams No. 13CA965, 2014-Ohio-3024, ¶ 13.

**{¶37}** "Crim.R. 11(C) governs the process that a trial court must use before accepting a felony plea of guilty or no contest." *Veney* at ¶ 8. Before accepting a guilty plea in a felony case a trial court must address the defendant personally and determine that "the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing." Crim.R. 11(C)(2)(a). The court must also inform the defendant of both the constitutional and nonconstitutional rights he is waiving and determine that he "understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence." Crim.R. 11(C)(2)(b). Finally, the court must determine that the defendant understands that he "is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself." Crim.R. 11(C)(2)(c).

**{¶38}** Leonhart contends that his guilty plea was not valid because: (1) he suffered from mental illnesses that precluded him from understanding the nature of the charges, the rights he was waiving by pleading guilty, and the effect of his plea; (2) the trial court failed to advise him that the state bore the burden of proof beyond a

reasonable doubt as to all the offenses and specifications to which he pleaded guilty; and (3) his plea was based on his trial counsel's misinformation concerning the aggregate maximum sentence the trial court could impose.

{¶39} For his first contention Leonhart contends that his mental illnesses prevented him from entering a knowing, intelligent, and voluntary plea to the charges. He is correct that the psychologist who conducted his competency examination diagnosed him as having a history of depression and alcohol abuse and that he suffered from anxiety and depression related to his incarceration and charges. Nevertheless, the psychologist observed that Leonhart had no memory deficit or other cognitive dysfunction, the effect of the mental illness and stressors on his everyday functioning was moderate, but he was coping reasonably well without medication, he knew his charges and the severity of each, he was aware that he was accused of murdering Baker, he had no concerns about his attorney, he understood the proceedings, he knew that the judge would be responsible for sentencing, he was able to make decisions in his own best interest, and that he was able to understand plea bargains, as long as they were reasonable. The psychologist concluded that notwithstanding his mental illness, Leonhart was competent to stand trial because he was capable of understanding the nature and objective of the proceedings against him and was able to assist his attorney with his defense. The parties stipulated to the psychologist's report and the trial court determined that Leonhart was competent to stand trial based on the report.

{¶40} At the plea hearing a few months after the competency evaluation and determination, the trial court engaged Leonhart in a detailed colloquy in which Leonhart specified that he understood the nature of the charges, the elements, and the potential

penalties, that he did not have any physical or mental-health problems at that time, and that he was not under the influence of alcohol or on any prescribed medications.

**{¶41}** Despite his claims, "[c]ompetency is presumed and the defense bears the burden of proving incompetency." *State v. Roberts*, 137 Ohio St.3d 230, 2013-Ohio-4580, 998 N.E.2d 1100, ¶ 89; *State v. Rittner*, 6th Dist. Fulton No. F-05-003, 2005-Ohio-6526, ¶ 38 (applying this standard in the context of an appeal from the denial of a motion to withdraw a guilty plea). " 'A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.' " *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, 790 N.E.2d 303, ¶ 29, quoting *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986). Therefore, a defendant suffering from a mental illness may still be competent to enter a knowing, intelligent, and voluntary guilty plea. *See State v. Humphrey*, 6th Dist. Williams No. WM-05-012, 2006-Ohio-1630, ¶ 34 ("even though appellant notes that the trial court and appellant's counsel recognized his mental state at the time of the plea hearing and at the sentencing hearing, the trial court's decision to deny appellant's motion [to withdraw his guilty plea] was not an abuse of discretion"); *State v. Walker*, 8th Dist. Cuyahoga No. 65794, 1994 WL 530892, *2 (Sept. 29, 1994) ("A defendant may be mentally unstable and still be capable of understanding the charges against him and entering a plea in a knowing, intelligent, and voluntary manner"); *State v. Swift*, 86 Ohio App.3d 407, 411-412, 621 N.E.2d 513 (11th Dist.1993) (defendant suffering from depression was mentally competent to enter guilty plea).

**{¶42}** The record here is replete with evidence that supports the trial court's determination that Leonhart's mental infirmities did not prevent him from entering a valid

guilty plea. The cases Leonhart cited are inapposite: this is not a case where additional inquiry by the trial court was required as the competency evaluation and determination were made just a few months before the plea hearing; nor was there any indication that Leonhart was under the influence of alcohol or drugs when he entered his guilty plea. *Compare State v. Schreiber*, 12th Dist. Butler No. CA2006-09-237, 2007-Ohio-6030, ¶ 19 (guilty plea was not knowing, intelligent, and voluntary due to a myriad of circumstances, including that the issue of the appellant's competency to understand the proceedings and charges against him was never resolved by a competency evaluation); *State v. Mink*, 101 Ohio St.3d 350, 2004-Ohio-1580, 805 N.E.2d 1064, ¶ 66 ("Additional inquiry is necessary into a defendant's mental state once a defendant seeking to enter a guilty plea has stated that he is under the influence of drugs or medication"). Therefore, Leonhart's first contention is meritless.

**{¶43}** Leonhart next contends that his guilty plea was not valid because the trial court failed to advise him that the state bore the burden of proof beyond a reasonable doubt for all of the charges and specifications. "[T]he duty to advise the defendant of the right to have guilt proven by the state beyond a reasonable doubt is among the duties of Crim.R. 11(C)(2)(c) with which the court must strictly comply," and absent strict compliance, a plea of guilty is invalid. *Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 21.

**{¶44}** Leonhart argues that at the plea hearing the trial court advised him of the state's burden to prove his guilt beyond a reasonable doubt only for the charge of aggravated murder and not for the accompanying specifications or the remaining

charges of aggravated burglary and felonious assault.  A review of the plea hearing

dispels this claim because in the introduction of its colloquy the trial court stated:

> THE COURT:  Before you enter a plea of guilty, we're going to engage in a dialogue.
>
> The offense of aggravated murder is an unscheduled felony.  The offense of aggravated burglary is a first degree felony.  The offense of felonious assault is a felony of the second degree.
>
> The elements of these charges and what the State must prove beyond a reasonable doubt are first venue * * *.

{¶45} The trial court's specification of the state's burden of proof applied to all of

the charges, including the specifications accompanying the aggravated murder charge

and the aggravated burglary and felonious assault charges, and not simply the

aggravated murder charge.  "[A]lthough the state has the burden to prove all the

elements of the crime beyond a reasonable doubt, it does not have to reiterate its

burden of proof prior to its recitation of each count." *State v. Thomas*, 11th Dist.

Trumbull No. 2003-T-0097, 2004-Ohio-6947, ¶ 18.  " '[T]he trial court's failure to

reiterate the state's burden of proof prior to its recitation of each count will not, standing

alone, act to invalidate a defendant's guilty plea.  Instead, a reviewing court must

determine whether the record demonstrates that the trial court 'meaningfully informed'

the defendant as to the rights of trial in a manner which allowed the trial court to

determine that the defendant understands the waiver of such rights.' " *Id.* at ¶ 18,

quoting *State v. Porterfield*, 11th Dist. Trumbull No. 2002-T-0045, 2004-Ohio-520, ¶ 54,

overruled on other grounds, 106 Ohio St.3d 5, 2005-Ohio-3095, 829 N.E.2d 690.  The

record establishes that the trial court strictly complied with Crim.R. 11(C)(2)(c) by

informing Leonhart that he had the right to have the state prove his guilt of all the charges beyond a reasonable doubt.  Therefore, we reject his second contention.

**{¶46}** Leonhart's third contention claims that his plea was based on his trial counsel's misinformation that his aggregate prison sentence would be no greater than life with parole eligibility after 35 years.  "Although difficult to precisely define, suffice it to say that an overwhelming authority of case law states that manifest injustice, as contemplated by [Crim.R. 32.1], does not, *ipso facto* result from counsel's erroneous advice concerning the sentence that will be imposed."  *State v. Blatnik*, 17 Ohio App.3d 201, 203, 478 N.E.2d 1016 (6th Dist.1984); *State v. Simmons*, 8th Dist. Cuyahoga No. 94982, 2010-Ohio-6188, ¶ 14; *State v. Mootispaw*, 4th Dist. Lawrence No. 97CA26, 1998 WL 191934, *3.  Nevertheless, in certain circumstances erroneous advice of counsel regarding the sentence to be imposed may result in manifest injustice warranting withdrawal of a guilty plea.  *Blatnik* at 203.

**{¶47}** In *State v. Langenkamp*, 3d Dist. Shelby Nos. 17-08-03 and 17-08-04, 2008-Ohio-5308, at ¶ 25 and 27 (emphasis sic), the Third District Court of Appeals set forth the distinguishing factor, as well as the applicable test, to determine whether a defendant has established a manifest injustice sufficient to warrant a postsentence withdraw of a guilty plea:

> Whether a manifest injustice exists for purposes of a post-sentence withdrawal of guilty or no contest plea by virtue of counsel's sentencing advice depends upon the nature of that advice.  The case law indicates a clear demarcation between counsel's sentencing advice that is a "good faith estimate" or "speculative," and counsel's erroneous representation of a *promised sentence.*  The former type of advice which a defendant relies upon does not create a manifest injustice necessary for a post-sentence withdrawal of guilty or no contest plea. *** (citations omitted). The latter type of advice which a defendant relies upon *may* create a manifest

injustice, and thus, may require a post-sentence withdrawal of plea. (citations omitted) * * *

After a review of the applicable case law, this Court holds that in order for a defendant to establish a manifest injustice sufficient for a post-sentence withdrawal of a guilty or no contest plea, a defendant must establish that: (1) defense counsel mistakenly represented what has been promised by way of a sentence; (2) the erroneous representation played a substantial part in his/her decision to plead guilty or no contest; and (3) he/she was reasonably justified in relying upon counsel's erroneous representation.

**{¶48}** Based on the affidavits of Leonhart's trial counsel and Leonhart's mother, Leonhart arguably established both that his counsel mistakenly represented that he would receive a maximum sentence of life with parole eligibility after 35 years, and his counsel's erroneous representation played a substantial part in his decision to plead guilty. Nevertheless, Leonhart did not establish that he reasonably relied on the erroneous representation concerning his maximum sentence. Instead, the record of the plea hearing plainly refutes any claim of reasonable reliance on the mistaken representation. The trial court informed him that the maximum aggregate sentence the court could impose was life imprisonment with the possibility of parole after 52 years. Leonhart stated that he understood that was the maximum sentence, that no promises by anyone to him were binding on the court, that the court could impose the maximum sentence, and that no one promised him that he would receive a lesser aggregate sentence than that specified as the maximum by the court:

THE COURT: Now, before you plead guilty, I need to be certain that you understand these proceedings. You do understand the nature of the charges against you?

THE DEFENDANT: Yes.

THE COURT: You understand the maximum penalty the Court could impose, is life imprisonment with a possibility of parole after 52 years and a fine of $35,000?

THE DEFENDANT:  Yes, ma'am.

\* \* \*

THE COURT:  You understand that if any promise has been made to you by anyone, that those promises are not binding on the Court, and if you plead guilty, the Court alone -- that is, the Judge -- will decide your sentence and you could receive the maximum penalty prescribed by law?

THE DEFENDANT:  Yea -- yes.

THE COURT:  Other than the agreement that's been stated in open court, was there any other promise made to you by any person to get you to plead guilty today?

THE DEFENDANT:  Just, other than the -- low end would be taken off and the high end would be taken off.

THE COURT:  All right.  But other than that, there's no other promise?

THE DEFENDANT:  No.

**{¶49}**  The record is thus clear that Leonhart knew what his potential maximum sentence was, that the court was not bound by any promise made by his counsel regarding the aggregate length of the sentence, and Leonhart advised the court that no such promises were made to him.  Under these circumstances, Leonhart could not establish any manifest injustice warranting the withdrawal of his guilty plea based on erroneous advice by his trial counsel concerning the length of his sentence.  *See Langenkamp*, 3d Dist. Shelby Nos. 17-08-03 and 17-08-04, 2008-Ohio-5308, ¶ 28; *State v. Jackson*, 5th Dist. Delaware Nos. 04CA-A-11-078 and 04CA-A-11-079, 2005-Ohio-5173, ¶ 25 (based on trial court's statements during the Crim.R. 11 colloquy at the plea hearing, "regardless of what appellant may have been told by his attorney, appellant was aware of the potential sentences he faced"); *State v. Parker*, 4th Dist. Wash. No. 96CA35, 1998 WL 2407, *3 (Jan. 6, 1998) ("Even if appellant's attorney did

indicate that appellant would not receive the maximum sentence possible, appellant could not have reasonably relied upon his attorney's advice over the judge's statement"); *State v. Herrera*, 3d Dist. No. 1-01-126, 2001 WL 1635131, *4 (Dec. 20, 2001) ("the extensive explanations and admonishments completely contradict his assertion that his guilty plea was based on a misunderstanding of the potential sentences"). Because Leonhart could not reasonably rely on his trial counsel's representation concerning his sentence, we reject his third contention.

{¶50} In his final contention Leonhart asserts that the court erred by not conducting an evidentiary hearing on his motions to withdraw his guilty plea. His argument is premised on his prior erroneous contention that his motions were presentence motions, which require a hearing by the trial court before ruling on them. *Xie*, 62 Ohio St.3d at 527, 584 N.E.2d 715 (for presentence motions to withdraw a guilty or no contest plea, "the trial court must conduct a hearing to determine whether there is a reasonable and legitimate basis for the withdrawal of the plea"); *State v. Burchett*, 4th Dist. Scioto No. 11CA3445, 2013-Ohio-1815, ¶ 13 ("a hearing on a [presentence] motion to withdraw a guilty plea must be conducted"). Because his motions constituted postsentence motions, these authorities do not support his contention.

{¶51} Instead, an evidentiary hearing is not required for deciding postsentence motions to withdraw a guilty plea where the record conclusively and irrefutably contradicts the allegations in the post-sentence motion to withdraw. *See Pasturzak*, 4th Dist. Scioto No. 08CA3252, 2009-Ohio-4222, ¶ 18; *State v. Iafornaro*, 9th Dist. Lorain No. 01CA007967, 2002-Ohio-5550, ¶ 12. For the reasons previously specified, all of Leonhart's contentions in his motions to withdraw his guilty plea were conclusively and

irrefutably contradicted by the record of the proceedings before the court, including the competency and plea hearings. Therefore, the trial court properly exercised its broad discretion in determining that Leonhart did not satisfy his burden of establishing the extremely high standard of manifest injustice that would have warranted a withdrawal of his guilty plea. There was no clear and openly unjust act or a fundamental flaw in the proceedings resulting in a miscarriage of justice or a deprivation of due process. We overrule his first assignment of error.

### B. Allied Offenses of Similar Import

{¶52} In his second assignment of error Leonhart asserts that the trial court erred when it did not merge the offenses of aggravated burglary and felonious assault.

### 1. Standard of Review

{¶53} Appellate courts apply a de novo standard of review in an appeal challenging a trial court's determination of whether offenses constitute allied offenses of similar import that must be merged under R.C. 2941.25. *State v. Williams*, 134 Ohio St.3d 482, 2912-Ohio-5699, 983 N.E.2d 1245, ¶ 28; *State v. Cole*, 4th Dist. Athens No. 12CA49, 2014-Ohio-2967, ¶ 7. However, because Leonhart did not raise this issue below, we can only review it under the plain error standard of Crim.R. 52(B). *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, ¶ 31; *State v. Creech*, 188 Ohio App.3d 513, 523, 2010-Ohio-2553, 936 N.E.2d 79 (4th Dist.). To prevail, Leonhart must show that an error occurred, that the error was plain, and that but for the error, the outcome of the trial clearly would have been otherwise. *State v. Mammone*, 139 Ohio St.3d 467, 2014-Ohio-1942, 13 N.E.3d 1051, ¶ 69.

### 2. Merger Analysis

**{¶54}** Under the applicable test for merger, R.C. 2941.25(A) requires the sentencing court to first determine whether it is possible to commit one offense and commit the other with the same conduct. *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, ¶ 48. If the defendant's conduct constituting commission of one offense can constitute commission of the other, then the offenses are of similar import, and the court must then decide whether the offenses were committed with a single state of mind, i.e., a single animus. *Id.* at ¶ 48-49. If so, the offenses are allied offenses of similar import that must be merged, and the defendant can only be punished for one. *Id.* at ¶ 50.

**{¶55}** Leonhart contends that the aggravated burglary and felonious assault offenses should have been merged because they were both committed against Mike Lisk. But as the state argues, it is evident that Lisk was the victim of only the felonious assault charge. The indictment specified that Lisk was the victim in the felonious assault charge, but did not specify a victim for either of the aggravated burglary charges. And at the plea hearing the state indicated that that Lisk was the victim in the felonious assault charge, but did not indicate that he was the victim in the other charges. Instead, the stipulated facts at the plea hearing establish that the aggravated burglary charge related to Leonhart's trespass in Baker's home, and not any trespass in Lisk's home. R.C. 2911.11(A)(2). The facts did not establish that Leonhart trespassed in Lisk's home—the confrontation between them instead occurred at the front door of the residence. The aggravated burglary and felonious assault offenses were thus sufficiently separate and distinct that they were not committed at the same time with the same animus. *See State v. Kay*, 2d Dist. Montgomery No. 25761, 1014-Ohio-2676, ¶

25 (aggravated burglary and aggravated robbery were not allied offenses of similar import because they were not committed at the same time with the same animus). Therefore, the trial court did not commit any error, much less plain error, in failing to merge Leonhart's convictions for aggravated burglary and felonious assault so that he could be sentenced only on one of them. We overrule Leonhart's second assignment of error.

### C. Consecutive Maximum Sentences

{¶56} In his third assignment of error Leonhart asserts that the trial court erred when it ordered that his sentences be served consecutively. In his fourth assignment of error he contends that the trial court erred when it imposed the maximum sentences for aggravated burglary and felonious assault and in ordering that the sentences be served consecutively. Because these assignments raise related issues, we consider them jointly.

### 1. Standard of Review

{¶57} When reviewing felony sentences we apply the standard of review set forth in R.C. 2953.08(G)(2). *See State v. Brewer*, 2014-Ohio-1903, 11 N.E.3d 317, ¶ 33, 4th Dist. ("we join the growing number of appellate districts that have abandoned the *Kalish* plurality's second-step abuse-of-discretion standard of review; when the General Assembly reenacted R.C. 2953.08(G)(2), it expressly stated that '[t]he appellate court's standard of review is not whether the sentencing court abused its discretion' "). R.C. 2953.08(G)(2) specifies that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds that

"the record does not support the sentencing court's findings" under the specified statutory provisions or "the sentence is otherwise contrary to law."

### 2. R.C. 2929.14(C) Analysis

**{¶58}** Leonhart first challenges the trial court's imposition of consecutive sentences for the charges to which he pleaded guilty. Under the tripartite procedure set forth in R.C. 2929.14(C)(4), prior to imposing consecutive sentences the trial court had to find that: (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender, (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and (3) as applicable here, the harm caused by two or more multiple offenses was so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of the offender's conduct. *See, State v. Baker*, 4th Dist. Athens No. 13CA18, 2014-Ohio-1967, ¶ 36. The trial court "is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into the sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.2d 659, syllabus. The trial court here complied with R.C. 2929.14(C)(4) by making the requisite findings at the sentencing hearing, and incorporating them in its original and amended sentencing entries.

**{¶59}** Nonetheless, Leonhart contends that the trial court's findings did not satisfy the statutory requirement that it find that the harm caused by two or more multiple offenses was so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of the offender's conduct.

Specifically, Leonhart points to the trial court's findings at the sentencing hearing and in its sentencing entries that the crimes were more serious than normal because he caused serious physical harm to Baker, causing his death, and to Lisk. The record, including the stipulated facts, support the trial court's finding that the harm caused by Leonhart's multiple offenses—the shooting and killing of Baker, the terrorizing of Fickeisen at gunpoint, and the physical assault on Lisk, resulting in his broken hip and necessitating a hip-replacement surgery that same day—was so great or unusual that no single prison term adequately reflected the seriousness of his conduct. In effect, Leonhart set in motion a deadly series of events that left one person dead, and two people traumatized and/or severely injured. To be sure, the trial court did not impose the maximum sentence of life imprisonment without the possibility of parole on Leonhart's aggravated murder conviction. But after deciding not to impose that sentence, it acted within its discretion by determining that consecutive sentences that resulted in Leonhart's aggregate sentence of life imprisonment with parole eligibility after 52 years adequately reflected the seriousness of his multiple offenses. We conclude that the record supports the trial court's imposition of consecutive sentences.

{¶60} Leonhart also claims that the trial court erred in failing to account for his mental illness when it imposed consecutive sentences. However, the record indicates that the court did consider it, but noted that "while Mr. Leonhart does suffer from a major mental illness, he did know the wrongfulness of his actions and was therefore not, Not Guilty by Reason of Insanity." The trial court's refusal to give more weight to this evidence is supported by the psychological evaluations concluding that Leonhart was not insane at the time of the offenses and that he was competent to stand trial.

**{¶61}** Leonhart next claims that the trial court's imposition of a life sentence upon a seriously mentally ill person violated the state and federal constitutional provisions prohibiting cruel and unusual punishment. "Where none of the individual sentences imposed on an offender are grossly disproportionate to their respective offenses, an aggregate prison term resulting from consecutive imposition of those sentences does not constitute cruel and unusual punishment." *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, syllabus. Because none of the sentences for each of Leonhart's individual crimes is grossly disproportionate to those respective crimes, his aggregate prison sentence does not constitute cruel and unusual punishment.

**{¶62}** Leonhart finally claims that the trial court abused its discretion by imposing the maximum sentences for aggravated burglary and felonious assault when the sentencing factors in R.C. 2929.11, 2929.12, and 2929.13 are "mixed" concerning the need to impose longer sentences. Because the applicable standard of review for felony sentencing cases no longer includes a challenge based on an abuse of discretion, Leonhart's claim fails. *Brewer*, 2014-Ohio-1903, 11 N.E.3d 317, ¶ 40. Moreover, the trial court retains significant latitude in determining what weight *** it assigns to the statutory seriousness and recidivism factors and other relevant evidence." *See State v. Hall*, 10th Dist. Franklin No. 07AP-292, 2007-Ohio-5017, ¶ 25.

**{¶63}** Therefore, Leonhart failed to establish by the requisite clear and convincing evidence that the record does not support the trial court's findings or that the sentence is otherwise contrary to law. We overrule his third and fourth assignments of error.

## D. Costs

**{¶64}** In his fifth assignment of error Leonhart contends that the trial court abused its discretion when it ordered him to pay court costs and entered judgment against him.  In all criminal cases costs must be included in the sentencing entry.  R.C. 2947.23(A).  This statute requires trial courts to assess costs against all criminal defendants, even indigent ones.  *State v. Clevenger*, 114 Ohio St.3d 258, 2007-Ohio-4006, 871 N.E.2d 589, ¶ 3. Nevertheless, a trial court may waive the payment of court costs if the defendant makes a motion to waive court costs at the time of sentencing. *Id.* at paragraph two of the syllabus; *State v. Threatt*, 108 Ohio St.3d 277, 2006-Ohio-905, 843 N.E.2d 164, paragraph two of the syllabus ("A motion by an indigent criminal defendant for waiver of payment of court costs must be made at the time of sentencing").  When a defendant makes a timely motion to waive costs, a court's denial of the indigent criminal defendant's motion is reviewed under an abuse-of-discretion standard.  *Id.* at paragraph four of the syllabus.

**{¶65}** The state claims that Leonhart waived this issue by failing to file a motion seeking a waiver of costs at the time he was sentenced.  But before the sentencing hearing Leonhart did timely file a motion to waive court costs based on his indigency. Because the motion was properly pending at that time, it was timely filed and should have been considered by the trial court.  *See State v. Bishop*, 12th Dist. Butler No. CA2013-06-098, 2014-Ohio-1797, ¶ 12 (trial court had duty to address motion to waive court costs filed five days before defendant was resentenced).

**{¶66}** A review of the record establishes that the trial court initially determined that Leonhart was indigent and appointed him counsel.  At sentencing there was no

evidence indicating a change in his financial condition.  And at the conclusion of the

sentencing hearing, the trial court indicated that it understood that Leonhart was

indigent and if he was unable to hire anyone for purposes of appeal, the court would

appoint an attorney.

{¶67}  Consequently, the record establishes that Leonhart timely filed a motion to

waive costs but the trial court abused its discretion by not ruling on it.  In fact, the trial

court appeared to have determined that Leonhart was still indigent at the time of

sentencing.  Therefore, the portion of the trial court's sentence imposing court costs

must be reversed and remanded so that the court can exercise its discretion by ruling

on the motion.  *Bishop* at ¶ 12-13 (reversal and remand is required for the trial court to

rule on pending motion to waive court costs).  We sustain Leonhart's fifth assignment of

error.

E. Restitution

{¶68}  In his sixth assignment of error Leonhart asserts that the trial court erred

when it ordered him to pay restitution.  Leonhart contends that the trial court erred when

(1) it did not determine the amount in open court, and (2) it abused its discretion

because he lacks the present and future ability to pay it.  Although Leonhart did not

object to the trial court's imposition of restitution at the sentencing hearing, he did not

waive all but plain error because the trial court did not impose a specific amount at that

time.  Therefore, he could not have disputed an amount that had not been ordered by

the trial court at sentencing.

{¶69}  "If the court imposes restitution, at sentencing, the court shall determine

the amount of restitution to be made by the offender."  R.C. 2929.18(A)(1).  Here, the

trial court committed plain error by failing to establish the amount of restitution at the sentencing hearing.  *See State v. Collins*, 2d Dist. Montgomery No. 21182, 2006-Ohio-3036, ¶ 4, citing *State v. Brodman*, 3d Dist. Hardin Nos. 6-02-05 and 6-02-06, 2002-Ohio-5584, ¶ 10 ("A trial court's failure to establish the amount of restitution at the sentencing hearing constitutes plain error requiring remand").

**{¶70}**  Moreover, R.C. 2929.18(A)(1) provides that "[i]f the court imposes restitution, the court shall order the restitution to be made in open court * * *."  The defendant must be physically present during the imposition of sentence.  Crim.R. 43(A)(1).  A trial court commits reversible error when it fails to impose the amount of restitution in open court during the sentencing hearing.  *See State v. Miller*, 2d Dist. Clark No. 08CA0090, 2010-Ohio-4760, ¶ 34.  The parties agree that the court never imposed restitution in a specific amount when it ordered it in an undetermined amount at sentencing.

**{¶71}**  The state nevertheless claims that no prejudice occurred because the trial court noted the request for restitution in the sum of $3,351.51, and neither side desired to submit any evidence on restitution, The Second District Court of Appeals rejected a similar argument in *Miller* at ¶ 34:

> The State does not dispute Defendant's contention that he was not physically before the court when the amount of restitution was imposed. The State instead argues that Defendant was not prejudiced on that account because the amount of restitution ordered, $11,730.20, was the amount of restitution that had been recommended in the presentence investigation report, which the court and the parties reviewed prior to the sentence that was imposed on September 2, 2008.  We do not agree. Until an amount of restitution was imposed by the court, Defendant had no right to the hearing to which he is entitled by R.C. 2929.18(A)(1), should he dispute the amount ordered.  Further, a defendant's physical presence is always required, absent an express waiver.

**{¶72}**  Therefore, the trial court erred when it failed to determine an amount of restitution it was imposing at the sentencing hearing, and its attempt to issue an amended sentencing entry supplying the amount was erroneous because it was made outside of Leonhart's physical presence.  *Id.* at ¶ 33 ("When a sentence that was pronounced in open court is subsequently modified, and a judgment entry reflects the modification, the modification must have been made in the defendant's presence").  By so holding, we need not address Leonhart's remaining argument that the trial court abused its discretion in ordering restitution because it is rendered moot.  We sustain Leonhart's sixth assignment of error.

F. Ineffective Assistance of Counsel

**{¶73}**   In his seventh assignment of error Leonhart asserts that the acts and omissions of his trial counsel deprived him of his right to the effective assistance of counsel.  To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different.  *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113; *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674; *State v. Knauff*, 4th Dist. Adams No. 13CA976, 2014-Ohio-308, ¶ 23.  The defendant has the burden of proof because in Ohio, a properly licensed attorney is presumed competent. *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62.  Failure to satisfy either part of the test is fatal to the claim.  *Strickland* at 697; *State v. Bradley*, 42 Ohio St.3d 136, 143, 538 N.E.2d 373 (1989).

**{¶74}** In this assignment of error Leonhart reiterates claims from his previous assignments. He claims his counsel was ineffective for giving erroneous advice about the length of his potential aggregate maximum sentence. See his first assignment of error. However, Leonhart is unable to prove a reasonable probability of a different outcome given: 1) the trial court's detailed, explicit admonishments at the plea hearing, 2) Leonhart's assurance that he understood that his potential maximum aggregate sentence was life imprisonment with the possibility of parole after 52 years and 3) that he understood that the trial court would impose sentence notwithstanding any promises or representations by anybody else.

**{¶75}** We analyzed his arguments concerning his trial counsel's failure to object to the merger of the aggravated burglary and felonious assault offenses under his second assignment of error. Likewise we analyzed his argument about the trial court's imposition of consecutive and maximum sentences in his third and fourth assignments of error. Based upon our disposition of these assignments of error, Leonhart cannot establish either deficient performance or prejudice.

**{¶76}** His trial counsel timely raised the issue of waiver of court costs by filing a motion. See his fifth assignment of error. And the error detailed in his sixth assignment of error concerning the restitution order was preserved notwithstanding any failure to object by his trial counsel. Therefore, Leonhart has not established that his trial counsel was constitutionally ineffective. We overrule his seventh assignment of error.

IV. CONCLUSION

**{¶77}** We overrule Leonhart's first, second, third, fourth, and seventh assignments of error and affirm the trial court's judgments denying his postsentence

motions to withdraw his guilty plea and the portion of his sentence imposing his

aggregate prison term.  However, we sustain Leonhart's fifth and sixth assignments of

error and reverse the portion of his sentence imposing costs and restitution.

JUDGMENT AFFIRMED IN PART,
REVERSED IN PART,
AND CAUSE REMANDED.

## **JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED IN PART AND REVERSED IN PART and that the CAUSE IS REMANDED.  Appellant and Appellee shall split the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Washington County Court of Common Pleas to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, P.J. & McFarland, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
       William H. Harsha, Judge


### **NOTICE TO COUNSEL**

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**