[Cite as *State v. Walker*, 2020-Ohio-617.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
GALLIA COUNTY

STATE OF OHIO, :

    Plaintiff-Appellee, : Case No. 19CA1

    vs. :

ANTWAN D. WALKER, : DECISION AND JUDGMENT ENTRY

    Defendant-Appellant. :

_____

APPEARANCES:

Timothy P. Gleeson, Logan, Ohio, for appellant.[1]

Jason Holdren, Gallia County Prosecuting Attorney, and Jeremy Fisher, Gallia County Assistant Prosecuting Attorney,   Gallipolis, Ohio, for appellee.

_____

CRIMINAL APPEAL FROM COMMON PLEAS COURT
DATE JOURNALIZED: 2-12-20
ABELE, J.

{¶ 1} This is an appeal from a Gallia County Common Pleas Court judgment of conviction and sentence. Antwan D. Walker, defendant below and appellant herein, assigns the following errors for review:

FIRST ASSIGNMENT OF ERROR:

"THE CONVICTIONS FOR ASSAULT WERE NOT SUPPORTED BY SUFFICIENT EVIDENCE."

SECOND ASSIGNMENT OF ERROR:

---

[1] Different counsel represented appellant during the trial court proceedings.

"CONSECUTIVE SENTENCES FOR THE THREE ASSAULT CONVICTIONS ARE NOT SUPPORTED BY THE RECORD."

{¶ 2} In the evening of August 24, 2018, Floyd Kingery visited the home of his friend, Earl Spencer, in Bidwell. At the residence, Spencer's longtime girlfriend, Brenda Swisher, heard a knock at the front door. After she opened the door, Swisher observed appellant and he said that he wanted to come into the house. Swisher, however, said "no," slammed the door and yelled for Kingery. Appellant kept beating on the front door.

{¶ 3} Kingery eventually exited the house and told appellant to leave. Appellant, however, refused and said that he still wanted to enter the house. Kingery then told appellant that he intended to "call the law" and went inside to retrieve his cell phone. After speaking with Spencer, Kingery and Spencer went outside to look for appellant. At that point, they found appellant attempting to enter the back door of the house. Spencer grabbed appellant, told him to leave, and again asked why he was trying to break into the house. Appellant kept screaming that he wanted to go inside.

{¶ 4} While Spencer and Kingery were outside with appellant, Swisher called 911. Kingery held appellant on the ground while they waited for the sheriff and when they saw the cruiser, Kingery flagged it down and briefly left appellant unattended. Appellant took advantage of this opportunity to jump up, force his way through the side door of Spencer's house and knock Swisher into the kitchen counter. Both Kingery and Spencer then dragged appellant from the house, and, once outside, appellant broke loose and ran to cars parked in the driveway. Spencer once again gained control of appellant and waited for the cruiser to make its way up the driveway. Gallia County Sheriff's Deputy Amanda Wickline exited the cruiser, took appellant into custody, and transported him to the Holzer Hospital emergency room.

{¶ 5} At the hospital, hospital personnel attempted to help appellant, but, unfortunately, he refused treatment.  Deputy Wickline radioed for assistance and appellant was handcuffed, placed in Wickline's cruiser and taken to jail.  Apparently, earlier in the evening appellant injected methamphetamine, which caused him to hallucinate and, as evidenced by his ramblings to the officers, believe that demons were chasing him.  Officers also testified that appellant demonstrated superhuman strength in his efforts to escape and it was necessary for all five officers to restrain him.  At the jail, five officers escorted appellant: Deputy Wickline, Sergeant Adam Holcomb, Deputy Kenny Wroten, Corrections Officer Josh Perry, and Gallipolis City Police Department Patrolman Jonathan Elliott.  Wroten and Holcomb stood in the "escort position" astride appellant while Perry stood behind him, and together they began to walk appellant toward the jail.

{¶ 6} When the group approached the sidewalk, approximately thirty-five feet from the jail's door, appellant stopped moving, pressed backward with his torso and thrashed before becoming still.  Deputy Wroten testified that, at this point, appellant became "dead weight."  Due to his refusal to move, and the officers' concern for appellant's and their own safety, officers decided to retrieve a restraint chair from the jail.  Wroten and Officer Perry then held appellant against a wall while Patrolman Elliott retrieved the chair.  When officers attempted to place appellant in the chair, he began to thrash, kick, and throw his head back and forth.  Appellant also rambled incoherently about the devil, demons, God, and made vulgar comments to the officers.

{¶ 7} While officers restrained appellant, Wroten was situated at the front of the chair near appellant's legs.  Appellant then kicked Wroten in the knee and leg and caused him to almost stumble.  Wroten testified that the injury did not cause him to miss work, but that he "went down from it."  Perry, on appellant's left side, received a headbutt to the lip as appellant constantly swung

his head back and forth. Although the lip did not visibly bleed, Perry testified that he "could taste blood." Also, while Sergeant Holcomb attempted to place appellant's upper body into the chair, appellant wrapped his leg around Holcomb's leg and pinned Holcomb to the chair's frame. Holcomb then had to strike appellant's chest several times to get him to release the leg. Holcomb's left calf suffered a large black, blue and yellow contusion. At trial, five and one half months later, Holcomb still had a mark on his calf, which he displayed to the jury. Holcomb also testified that he thought appellant "was going to snap [his] leg."

{¶ 8} Based on the above events, the Gallia County Grand Jury returned an indictment that charged appellant with (1) trespass into a habitation in violation of R.C. 2911.12(B), a fourth degree felony; (2) assault on a peace officer (Deputy Wroten) in violation of R.C. 2903.13(A)/(C)(5), a fourth degree felony; (3) assault on a peace officer (Sergeant Holcomb) in violation of R.C. 2903.13(A)/(C)(5), a fourth degree felony; and (4) assault on a corrections officer (Officer Perry) in violation of R.C. 2903.13(A)/(C)(4)(a), a fifth degree felony.

{¶ 9} Appellant pleaded not guilty to all counts and, after discovery and a competency evaluation, the matter proceeded to a jury trial. After hearing the evidence, the jury found appellant guilty on all counts. The trial court accepted the jury's verdict, entered judgment and imposed the following sentences, to be served consecutively: an 18-month prison term for the first count of assault on a peace officer; an 18-month prison term for the second count of assault on a peace officer; a 12-month prison term for assault on a corrections officer; and an 18-month prison term for trespass into a habitation. This appeal followed.

I.

{¶ 10} In his first assignment of error, appellant asserts that sufficient evidence does not

support his assault convictions.   In particular, appellant argues that, at most, the evidence supports a single count of resisting arrest.   In response, the appellee contends that the evidence supports the jury's verdict on each of the three counts of assault.

{¶ 11} "When a court reviews a record for sufficiency, '[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶ 146, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus (1991); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781 (1979). "The court must defer to the trier of fact on questions of credibility and the weight assigned to the evidence." *State v. Dillard*, 4th Dist. Meigs No. 13CA9, 2014-Ohio-4974, ¶ 27, citing *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 132.   It is important to recognize that a trier of fact is free to believe all, part, or none of the testimony of any witness, and appellate courts generally defer to the trier of fact on evidentiary weight and credibility issues because the trier of fact is in the best position to evaluate witness demeanor, gestures, voice inflection, and to use these observations to weigh witness credibility.   *Dillard* at ¶ 28, citing *State v. West*, 4th Dist. Scioto No. 12CA3507, 2014-Ohio-1941, ¶ 23.

{¶ 12} In the case sub judice, appellant was convicted of two counts of assault on a peace officer in violation of R.C. 2901.13(A)/(C)(5) and one count of assault on a corrections officer in violation of R.C. 2901.13(A)/(C)(4)(a).   R.C. 2901.13(A) provides, "No person shall knowingly cause or attempt to cause physical harm to another or to another's unborn."   R.C. 2901.22 defines the relevant mental state as follows:

(B) A person acts knowingly, regardless of purpose, when the person is aware that the

person's conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when the person is aware that such circumstances probably exist. When knowledge of the existence of a particular fact is an element of an offense, such knowledge is established if a person subjectively believes that there is a high probability of its existence and fails to make inquiry or acts with a conscious purpose to avoid learning the fact.

R.C. 2901(B).   With regard to assault on a peace officer, R.C. 2901.13(C)(5) provides:

> If the victim of the offense is a *peace officer* or an investigator of the bureau of criminal identification and investigation, a firefighter, or a person performing emergency medical service, *while in the performance of their official duties*, assault is a felony of the fourth degree.

R.C. 2901.13(C)(5) (emphasis added).   "Peace officer" is defined to include, among others, a sheriff, deputy sheriff, marshal, deputy marshal, and member of the organized police department of any municipal corporation.   R.C. 2935.01(B); *see also* R.C. 2901.13(D)(1) (" 'Peace officer' has the same meaning as in section 2935.01 of the Revised Code.").   Regarding assault on a corrections officer, R.C. 2901.13(C)(4)(a) provides:

> (4) If the offense is committed in any of the following circumstances, assault is a felony of the fifth degree:
>
> (a) The offense occurs *in or on the grounds of a local correctional facility, the victim of the offense is an employee of the local correctional facility* or a probation department or is on the premises of the facility for business purposes or as a visitor, *and the offense is committed by a person who is under custody in the facility subsequent to the person's arrest for any crime* or delinquent act, subsequent to the person's being charged with or convicted of any crime, or subsequent to the person's being alleged to be or adjudicated a delinquent child.

R.C. 2901.13(C)(4)(a) (emphasis added).   " 'Employee of a local correctional facility' means a person who is an employee of the political subdivision or of one or more of the affiliated political subdivisions that operates the local correctional facility and who operates or assists in the operation of the facility."   R.C. 2903.13(D)(5).

{¶ 13} In the case at bar: (1) Deputy Wroten served as a deputy with the Gallia County Sheriff's Office, (2) Officer Perry served at the jail as a Gallia County Sheriff's Office corrections officer, and (3) Sergeant Holcomb served as a sergeant with the Gallia County Sheriff's Office. The evidence adduced at trial reveals that appellant kicked Wroten, headbutted Perry and pinned Holcomb's leg to the restraint chair. In addition, Perry and Holcomb each testified regarding their respective injuries.

{¶ 14} In the case sub judice, the officers' testimony supports the jury's finding that appellant caused physical harm to two peace officers (Wroten and Holcomb) and one corrections officer (Perry) while in the performance of their duties. The officers' testimony also supports the finding that appellant acted with the requisite mental state. Wroten testified that he believed appellant "was going to do anything he could to get away from us and not go in [to the jail.]" Wroten expanded on this belief when he testified:

> [Appellant] was given direct verbal commands to stop, to quit resisting. Uh, like I stated you know, I actually got his attention when he was sitting in the chair at one point, everything stopped, I told him I was getting tired of fooling with him, he needs to stop, he needs to quit resisting, he needs to cooperate and he continued to fight. Uh, he continued to kick, I was struck. Sgt. Holcomb gave him verbal commands to release CO Perry's hand, he refused to do that. Uh, Sgt. Holcomb's leg was pinned, he was told to release that, he refused.

Perry similarly opined that appellant "was trying everything he could to try to break free from our grasp" and attempted to cause physical harm to "[a]nybody that was in the area." Holcomb testified that, when appellant wrapped his leg around Holcomb's leg, appellant's eyes were "real big like, it was like an intent to me and I told him numerous times to let me go, let me go." Only after Holcomb struck appellant several times in the chest did appellant finally let go.

{¶ 15} Appellant also testified that he did not want to go in the restraint chair and, although

he fought to stay out of the chair, he did not "knowingly try to hurt anybody." Appellant added that he "was not trying to hit them, kick them, head butt them, it was just a result of me trying to you know, like wrestle with four, five, six grown men."

{¶ 16} After our review of the evidence adduced at trial, we believe that a rational trier of fact could find that when appellant physically engaged with the officers, he knew that his actions would cause physical harm. Also, the trier of fact could choose to reject appellant's testimony and, instead credit the officers' testimony. Their testimony is sufficient to support a finding that appellant knowingly committed the offenses.

{¶ 17} Therefore, because the appellee presented evidence from which the jury could have found all the essential elements of all three counts of assault beyond a reasonable doubt, we overrule appellant's first assignment of error.

## II.

{¶ 18} In his second assignment of error, appellant asserts that the trial court's consecutive sentences for the three assault convictions constitutes reversible error. In particular, appellant argues the record does not support the trial court's R.C. 2929.14(C) findings, especially the finding that the harm caused was so great or unusual that no single prison term would adequately reflect the seriousness of appellant's conduct. The appellee, however, argues that the record fully supports the imposition of consecutive sentences.

{¶ 19} "R.C. 2953.08(G)(2)(a) requires appellate courts to modify or vacate sentences if they find, by clear and convincing evidence, that the record does not support any relevant findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20." [C]lear and convincing evidence is that measure or degree of proof which is

more than a mere preponderance of the evidence, but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.  Thus, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds, by clear and convincing evidence, that the record does not support the sentence.

{¶ 20} R.C. 2929.41(A) establishes a statutory presumption in favor of concurrent sentences. "In order to impose consecutive terms of imprisonment, a trial court must make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but the court has no obligation to state reasons to support its findings."  *Blair* at ¶ 52, citing *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus.  "Under the tripartite procedure set forth in R.C. 2929.14(C)(4), prior to imposing consecutive sentences a trial court must find that: (1) consecutive sentences are necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) * * * the harm caused by two or more multiple offenses is so great or unusual that no single prison term for any of the offenses committed adequately reflects the seriousness of the offender's conduct."  *State v. Leonhart*, 4th Dist. Washington No. 13CA38, 2014-Ohio-5601, ¶ 58.  "Although it is not necessary for a trial court to use talismanic words in each step of its analysis to comply with R.C. 2929.14(C)(4), it must be clear from the record that the trial court actually made the required findings."  *Blair* at ¶ 53, citing *State v. Baker*, 4th Dist. Athens No. 13CA18, 2014-Ohio-1967, ¶ 37, citing *State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, ¶ 64.

{¶ 21} Recently, in *State v. Gwynne*, Slip Opinion No. 2019-Ohio-4761, the Supreme Court of Ohio, in a plurality opinion, spoke to the imposition of consecutive sentences. Three justices indicated that courts should not review consecutive sentences based on the principles and purposes of felony sentencing pursuant to R.C. 2929.11 and 2929.12 because paragraph 23 of *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, applies to a challenge to the length of a non-maximum sentence for a single count, not a challenge to consecutive sentences. According to the *Gwynne* plurality, the Ohio General Assembly intended R.C. 2953.08(G) to be the exclusive means of appellate review of consecutive sentences.[2]

{¶ 22} In the case sub judice, the trial court made the R.C. 2929.14(C)(4) findings required to impose consecutive sentences for appellant's assault convictions. Appellant nevertheless argues that the harm caused by the assaults is not so great or unusual that a single, 18-month term for any one conviction would fail to adequately reflect the seriousness of his conduct. Appellant instead contends that the three assaults arose from one incidence of resisting arrest, which is classified as a first-degree misdemeanor under R.C. 2921.33(B).

{¶ 23} The appellee counters that the following facts justify consecutive sentences: (1) appellant committed three distinct assaults against three different officers; (2) all officers wore uniforms; (3) officers used every means available, except mace, to de-escalate the situation, but appellant continued to fight, and (4) while appellant's conduct did not cause permanent injuries, all of the officers testified that the amount of force appellant used was unusual and unprecedented in

---

[2] Stewart, J. authored the *Gwynne* principal opinion joined by O'Connor, C.J. and French, J.; Kennedy, J. concurred only in the judgment, with an opinion joined by DeWine, J.; Fisher, J. concurred in judgment only, and Donnelly, J. dissented with an opinion. Unfortunately, it appears that Ohio felony sentencing continues to evolve in an evermore complicated and complex form.

their law enforcement experience. At sentencing, the trial court also noted that appellant demonstrated a pattern of substance abuse and, unfortunately, a refusal to seek treatment for his condition. According to appellant's own testimony, his injection of methamphetamine was a contributing factor to his arrest and fight with the officers.

{¶ 24} After our review of the record, and based on the above facts, we cannot conclude, by clear and convincing evidence, that the record does not support the imposition of consecutive sentences for appellant's three assault convictions. We agree with the rationale that the appellant's sentences are necessary to protect the public, to punish the offender's act of assault of three law enforcement officers, and no single prison term will adequately reflect the seriousness of the offender's conduct.

{¶ 25} Accordingly, based upon the foregoing reasons, we overrule appellant's second assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED

JUDGMENT ENTRY

It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Gallia County Common Pleas Court to carry this judgment into execution.

If a stay of execution of sentence and release upon bail has been previously granted by the trial court or this court, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of the proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Hess, J.: Concur in Judgment & Opinion

For the Court

BY:_____
Peter B. Abele, Judge

## NOTICE TO COUNSEL

Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.